## SMITH v. LOUISIANA POWER & LIGHT CO.
### No. 4912.

Court of Appeal of Louisiana. Second Circuit.
Feb. 5, 1935.

Moss & Moss, of Winnfield, for appellant.

R. B. Walden, of Winnsboro, R. L. A. Indest, of New Orleans, and Theus, Grisham, Davis & Leigh, of Monroe, for appellee.

DREW, Judge.

Plaintiff sued for damages he alleged were caused him by personal injuries he received when the mules pulling the wagon in which he and his father were riding became frightened and jumped from the road into a ditch alongside of the road, causing him to be thrown from the wagon and dragged by the front wheel of said wagon a distance of thirty feet, before he was able to extricate himself. He alleged the mules were gentle and unafraid of motor vehicles; that they were frightened on this occasion by the careless and reckless driving of the employee of defendant who was at the time driving a truck owned by defendant; and that the driver was in the employ of defendant, on a mission of his master at the time of the accident and injury.

The acts of negligence alleged by plaintiff are set forth in articles 9, 11, 12, 13, and 14 of the petition, and are as follows:

"9. A truck belonging to the Louisiana Power & Light Company was being driven by L. R. Crick, who was in the employ of the Louisiana Power & Light Company, and who was engaged in the service for which he was employed at that time and was traveling south from Crowville and in the opposite direction in which petitioner was traveling and the tractor and graders were being operated, and just as the team and wagon in which petitioner was riding was passing the tractor, the driver of the truck who was approaching the tractor on the right side of the highway and traveling at an excessive rate of speed, suddenly turned from his right side of the highway across the center line and on the side on which petitioner was traveling in an effort to pass between the wagon, in which petitioner was riding and the tractor and graders, and came so near the mules and wagon in which petitioner was riding that the truck struck the wagon and the mules became freightened and ran off the highway, turning the wagon off the highway and down an embankment several feet high and threw petitioner off the spring seat forward down between the singletree and left front wheel on to the ground in front of the wheel of the wagon and petitioner was dragged on the ground by the wheel of the wagon pressing against his body, a distance of about thirty

feet before the mules could be stopped and petitioner released from said wheel, which injured petitioner externally and internally so severely that he is confined to his bed and home and has been since the date of the injury, and has been unable to regain his normal physical condition and to perform manual labor of any reasonable kind. * * *

"11. At the time of the accident herein described, resulting in the injuries to petitioner, the wagon in which petitioner was riding was traveling on the right side of the road toward Crowville and the mules were being driven in a quiet, docile manner and were not frightened until the approach of the truck owned by Louisiana Power & Light Company being driven by its employee was suddenly turned across the center line and on to the left side of the highway and came so near the mules and wagon in which petitioner was riding that it struck said wagon and frightened the mules and caused said mules to jump off the highway and turned the wagon down the embankment and was dragged for a distance of about thirty feet before the mules were stopped, and petitioner was thrown from the wagon and caught by the front wheel as he fell from the wagon and dragged the distance herein stated with the front wheel of the wagon against his body and which injured petitioner to the extent herein set forth.

"12. That the person operating the tractor stopped the tractor and graders in order to avoid an accident or headon collision with the driver of the Louisiana Power & Light Company truck, who was traveling on said highway at a fast and reckless rate of speed and who turned to the right side of the highway on which petitioner was traveling, and passed the mules and wagon of petitioner at such a fast and reckless rate of speed between the wagon and team and so close that the truck struck the wagon a light side swipe causing the team to become frightened and jump off of the highway with the result herein described, and the driver and truck failed and refused to stop after the accident, but continued on down the highway at the same fast, reckless rate of speed.

"13. That the manner and method of the operation of the truck by defendant and its agent and employee was in violation of the road law regulating the passing of vehicles. That said truck was also being driven at an excessive rate of speed on the highway in disregard of the rights of others using said highway and that said truck was also turned to the left side of the highway in an effort to pass between the team and wagon in which petitioner was riding and the tractor and graders and came so close that the wagon was struck and the team was frightened, with the result herein set forth, and all of which caused petitioner to be injured as herein set forth.

"14. Petitioner did not in any way contribute to the accident and injury, which he received, and was traveling on the proper side of the highway and the mules were calm and quiet and not excited and frightened by the tractor and road machines, which they were passing, and which they were accustomed to on the highway, as well as automobiles and trucks, and were well broke to harness and a gentle pair of mules and would not have been frightened at all had it not been for the fact that the truck was being operated by defendant and its agent and employee having been turned across the middle line over on to the side of the highway on which petitioner was traveling at such a fast, reckless and careless rate of speed, and having come so near the mules that they were frightened and forced to jump off of the highway in an effort to escape being struck by the truck, and when said mules jumped off the highway the wagon was jerked down the embankment several feet high and petitioner was thrown from the spring seat on the ground and caught by the wheel and dragged a distance of about thirty feet and injured externally and internally to the extent and in the manner hereinabove set forth."

The defense is a denial of any negligence on the part of its truck driver, and a further defense is that plaintiff was not injured by the accident. In the alternative, it pleaded the contributory negligence of plaintiff in driving too near the edge of the road.

The lower court rejected the demands of plaintiff, and he has perfected an appeal to this court.

■ The facts in the case are as follows: On February 14, 1933, plaintiff and his father were riding in a wagon drawn by two mules. They were traveling south on the Winnsboro-Delhi highway, going from their home to A. A. Bush's store, a few miles south of Crowville. Plaintiff's father was driving, and both were sitting on a spring seat. When they arrived at a point about half a mile from their destination, they overtook a road-grading outfit operated by the Louisiana Highway Commission, which was traveling in the same direction as they. This grading outfit consisted of a truck, pulling two graders hitched on behind in tandem fashion, one so that the blade would cover the part of the road near-

est the shoulder, and the other so that its blade would extend out to the center of the road. This outfit was about seventy-five feet in length and was at the time grading the left side of the road in the direction it was traveling. One traveling the same direction in which the grading machine was going would only have to keep on his right-hand side to pass it; and one traveling north, or in the opposite direction from the route of the graders, would necessarily have to leave his right-hand side of the road and travel on his left-hand side, in order to pass the graders. The highway is only wide enough for one vehicle at a time to pass the graders. It therefore follows that on this occasion a vehicle traveling south on its right side of the road, upon reaching the graders at the same time another vehicle traveling north reached them, would have the right of way. This situation confronted plaintiff upon overtaking the graders, but on seeing a car coming from the south, plaintiff's team was pulled over to the left side of the road behind the grading outfit and there waited for the car to pass. The team was then driven to the extreme right of the road, the wheels of the wagon being about two feet from the edge along that side of the road, and proceeded to pass the graders. At the time they started to pass, plaintiff and his father saw a truck coming from the south at a distance of nearly half a mile away. Plaintiff's wagon successfully passed the graders and truck, which was pulling the graders, and was approximately twenty feet ahead of it when the on-coming truck of the defendant, traveling "pretty fast" and without slowing down, arrived. About the time the on-coming truck was nearly even with the mules, the truck was pulled to its left and headed in the direction of the mules. This caused the mules to become frightened, and they jumped to their right into the ditch to prevent being struck by the truck. The truck passed and continued on its way, the driver of the truck testifying that he did not know an accident had happened. Plaintiff was thrown from the wagon and dragged from six to ten feet by the front wheel. When he was able to extricate himself and get up, which was in a very short time, the truck was out of sight, which verifies the other testimony to the effect that the truck was traveling "pretty fast" and did not slow down.

There can be no doubt about the fact that the truck was driven very close to the mules and wagon. Plaintiff testified that if the mules had not jumped out of the way, they would have been struck. He and his father both say the truck fender brushed the back

wheel of the wagon. The other three eyewitnesses, who were all on the grading outfit, did not think the truck hit the wagon wheel, but went very close to it. When the truck passed the back of the wagon, it was between the men on the grader and the back wheel of the wagon, and plaintiff and his father, who were in the wagon, were in a better position to know whether the wagon wheel was brushed by the truck than they were. Whether the truck actually struck the wagon or not has no real probative value other than to show that it was driven dangerously close to the mules and wagon, for the striking of the back wheel, if it was struck, did not cause the accident; the frightening of the mules was the cause of the damage, if any.

We can safely find, under the evidence, that the truck was traveling at a rate of speed of thirty miles per hour or better, and that it was not slowed down at any time while passing. When it arrived at the place of the accident, the grading outfit had the truck's entire right-hand side of the road blocked, and the wagon, only twenty feet south of it, had the left-hand side partially blocked. For the truck to have remained on its right-hand side of the road until it had passed the wagon, in order for it to get by, it would have had to make a sudden turn to the left and a very sudden turn back to the right to prevent going into the ditch. At the speed the truck was making, such a sudden turn as it would have to make on this graveled road would have turned it over. Therefore, when the driver of the truck realized his perilous position, he cut to the left and passed as close to the mules and wagon as possible. In doing so, he headed his truck in the direction of the mules, which caused them to become frightened and jump from the highway. There was nothing unnatural about the action of these two old mules. It is the natural instinct of all animals to shy away from danger when they see it. We might excuse from this class the bovine species which apparently relies upon the judgment or instinct of man to save himself when they are in the way. The two mules in this case were old, one sixteen years of age, and the other much older. They were gentle and unafraid of automobiles and other motor vehicles. This is proved by the fact that they displayed no fear of this big truck and two graders, which certainly are much noisier than a car or a light truck, such as did frighten them. It is further demonstrated that they were gentle by the fact that they did not run away after jumping off the road, and were brought to a stop within ten or twelve feet, pulled the

wagon back up on the road, and quietly went on their way. It appears to us that the mules used good judgment in jumping off the road.

We are convinced that the charges of negligence made by plaintiff against defendant are amply established by the testimony in the record. It was clearly the duty of the driver of defendant's truck, when confronted with a situation such as faced him at the place of accident, to slow down his truck, remain on his right side of the road until the wagon had passed on, before attempting to go between the wagon and grading outfit. He did not do this and was grossly careless and negligent in not doing so.

Counsel for defendant begin their brief with the following statement:

"Cases of this kind rarely come before the courts at the present time, although during the early part of this century there was much litigation on the question of the liability of the driver of an automobile to a party suffering damage as the result of his horse or team becoming frightened at an automobile. A careful check of the most reliable digests reveals that facts similar to those in this case have given rise to comparatively few cases in the whole of the United States in the past few years. The reason for this, of course, is that animals have become accustomed to the automobile and are rarely frightened thereby. Automobiles are undoubtedly more prevalent on the highways today than horse-drawn vehicles and are taken as a matter of course by the owners of animals, and for that matter, by the animals themselves.

"Automobile drivers daily pass horse-drawn vehicles, animals on which men are riding, cows running at large, and the like, and such animals exhibit no signs of fear. There was a time when autoists, at the approach of an animal on the road, took every possible precaution to prevent frightening such animal, even bringing their machines to a stop if the animal showed signs of nervousness. That was when the automobile was a novelty. Such is not the case today. Drivers of automobiles, trucks and busses, having been taught by experience that animals no longer shy at such vehicles, pass them constantly without slackening speed and assume that such animals are accustomed to the modern conveyances.

"These are matters of which the court, we feel sure, will take notice, and we respectfully ask that the court keep them in mind as we attempt to assist it in arriving at a correct decision in this case."

■ We fully appreciate the correctness of defendant's statements in all respects, except as to the duty of a motorist when he sees that an animal has become frightened. We also appreciate the law to be that it is not necessary for a motorist to slacken his speed when passing an animal-drawn vehicle, unless he sees that the animals have become frightened; however, this rule of law applies only when the motorist keeps to his side of the road, and there is no rule of law which will justify a motorist to leave his side of the road when passing an animal-drawn vehicle, and pull to the left, steering his motor vehicle in the direction of the animals and in close proximity to them. One with reason should know that to do so would cause the animals to attempt to protect themselves by getting out of the way.

■ Defendant urges in the alternative that plaintiff was guilty of contributory negligence in driving his wagon too close to the edge of the road. There is no merit in this plea. If he had not been driving as near the edge as he was, the result would probably have been more serious. Although the lower court gave no written reasons, it is stated by counsel for both plaintiff and defendant that its decision was based on its finding that there was no negligence on the part of defendant's truck driver.

■ We dislike very much to reverse the lower court on facts, but when we find a judgment clearly erroneous, it is our duty to do so. We find such to be the case here, and the judgment of the lower court will have to be reversed and defendant held for whatever damage was caused by the negligence of its servant.

The testimony shows that plaintiff, prior to the accident, was apparently a healthy, robust man, physically able to perform manual labor. The year prior to the accident, he farmed and made nine bales of cotton, two hundred bushels of corn, and other produce: that after the accident he was confined to his bed for several weeks. Immediately after the accident he complained of pain in his back and hips and continued to have this pain in his back up to the time of trial below. When he was thrown from the wagon, the front wheel of the wagon pressed against the small part of his back and right side, and dragged him a distance of from six to ten feet. He has constantly complained of pain in this region since that time and has not been able to do a full day's work. There is no doubt that plaintiff received injuries and

is entitled to damages. The lower court did not pass upon this phase of the case, and defendant has neither argued nor briefed it here. As to whether plaintiff's injuries are permanent or not is difficult to say, under the conflicting testimony of the numerous doctors who testified in the case.

Plaintiff has suggested in brief that the case be remanded for the taking of further testimony as to the extent and permanency of plaintiff's injuries. Defendant has raised no objection to this request. In fairness to both defendant and plaintiff, we think it advisable to grant the request.

It therefore follows that the judgment of the lower court is reversed, and the case remanded for the purpose of allowing both plaintiff and defendant an opportunity to introduce evidence as to plaintiff's injuries, the extent and permanency of same; cost of appeal to be paid by appellee, and the cost of the lower court to await the final decision of the case.