Plaintiffs, the mother and father of Harvey Leottis Joyner, age sixteen, sued Lawrence E. Williams and The National Mutual Casualty Company of Tulsa, Oklahoma, the carrier of public liability insurance on his automobile involved herein, to recover damages because of the minor's death on May 3, 1947, allegedly occurring from the negligence and negligent acts of the said Williams.
The facts of the case, excepting some non-essential details, are not seriously in dispute. Williams, accompanied by a young man named Willie Lee, was traveling westerly in his Hudson sedan on highway No. 11, in West Carroll Parish, Louisiana, at a speed of about fifty miles per hour when the accident occurred. Ahead of him at the time was a Ford car going in the same direction that was owned and driven by one Luther Rogers. It was traveling at a speed of not over forty miles per hour. The highway is eighteen feet wide, is topped with a black asphaltic composition, along both sides of which there are unpaved shoulders four feet wide. Several hundred feet in advance of the Rogers car the deceased boy, mounted on a gentle, family pony, was proceeding easterly along the south shoulder. Both drivers observed the boy and horse several seconds prior to the accident. The horse was then going at a moderate speed. Williams had in the meantime so reduced the distance between himself and the Rogers car that it was necessary to pass it or lessen his speed. He elected to go ahead and pulled his own car over onto the left lane and when less than one hundred feet from the front car he observed that the horse had shifted its position from the shoulder to the left lane and was rearing upon its hind legs. There is some uncertainty as to whether the horse *Page 814 
reared up once or twice. We believe it did so twice. Mr. Rogers testified that when it first reared, his own car was not over twelve feet from it. When Williams first noticed that the horse was on the surfaced part of the road, out of control, he quickly applied his brakes and endeavored to regain his side of the road, but had not fully done so when the horse fell upon the hood and cowl of his car. He was then astride the line that bisects the road. Just prior to this, the boy fell to or was thrown from the horse onto the road. He was run over and dragged some sixty feet by the Williams car and died within an hour.
We conclude from the testimony and physical facts that the horse was on its hind legs when Williams' car got to it, as contact of one of the hoofs with the left headlight broke it, and in addition, its body, as said before, to some extent fell upon the hood and cowl. However, strange as it may seem, no bones of the horse were broken and soon after the tragic accident it was observed grazing near the scene.
The accident is accredited to the negligence of Williams in the following respects, to-wit:
Excessive speed; failure to maintain proper lookout; not operating his car on his right side of the highway; attempting to pass a vehicle without taking into proper consideration traffic conditions ahead of him; by following a forward vehicle without proper regard to speed or traffic conditions; driving his car with defective brakes, and failure to properly apply the brakes.
Defendants deny that the accident occurred from negligence of any character on the part of Williams. They allege that when he began the effort to pass the Rogers car, the highway ahead was clear and he was justified in making the effort; that the horse from fright at the front car or from other cause or causes, not attributable to Williams, or at the command of its rider, suddenly came onto the highway, reared and threw the boy or he jumped to the ground in front of the Williams car too close to escape being run over, notwithstanding Williams put forward every effort possible to do so; that the accident was simply unavoidable in view of the well established facts. In the alternative, defendants plead that should it be found and held that Williams to any extent was negligent, in connection with the accident, that plaintiffs are nevertheless barred from recovery, because of the contributory negligence of their deceased son.
There was judgment in favor of Mrs. Joyner for $6,000.00 and in favor of Mr. Joyner for $2,000.00. Defendants prosecute appeal to this court. Answering the appeal, plaintiffs pray for substantial increase in the amounts of the judgment.
The accident occurred about the hour of 10:30 A.M. The day was clear and the road surface was dry. There were no obstacles to nor interference with vision of either of the motorists or of the deceased. There was a curve several hundred feet east of the locus of the accident but this to no extent contributed to it. Both cars had cleared the curve and had straightened out on the tangent that leads from its western end.
The lower court gave written reasons for its judgment. Three points are made to support it. Primarily, it was found and held that the horse having become frightened was the moving cause of the accident but further held that Williams' conduct in trying to pass the Rogers car when so near the horse caused it to become frightened and its rider to lose control. This is the most serious question in the case, as we view it. Thereon hinges its outcome. The other two points stressed by the trial judge relate to the charge of not keeping a proper outlook and lack of efficacy of the brakes. Neither is pivotal.
The question that arises and may be pertinently asked is: Was the action of Williams in trying to pass the Rogers car at a speed of fifty miles per hour under the conditions and circumstances then existing, that of an ordinarily prudent and careful man? if not, did his action amount to negligence of such character as to render him responsible in damages for the result of the accident?
[1] The country about the locale of the accident consists of well developed farm lands. These join the highway on both *Page 815 
sides. Traffic at the time was light. It has been held, and properly so, that a speed of from fifty to sixty miles per hour through open country is not excessive. Gauthier v. Foote et al., La. App., 12 So.2d 9-13. This rule, of course, is subject to exceptions. Traffic conditions necessarily have to be considered in determining whether such rate of speed is or is not excessive. It follows that as a general rule, in the open country, it is permissible for a motorist traveling at said speed to overtake and pass another.
The horse in question had been in the Joyner family's possession for four years. It was six years old when the accident occurred. Plaintiffs' children rode and used it daily. It habits and temperament were excellent. It had never become frightened or unruly at the presence or approach of an automobile. But, all persons who have knowledge of the characteristics and dispositions of horses and have had expereince in handling them, know that regardless of their gentleness they never become absolutely immune from fright.
[2] In the early days of motor car traffic in this state, motorists were required to drive slowly and cautiously when meeting or passing a vehicle drawn by animals, but as time passed and domestic animals of all kinds became accustomed to the presence and noise of such vehicles, the rigor of the law was relaxed. Now a motorist is not required to reduce his speed at all when meeting or passing animal drawn vehicles or mounted horses on the highway, unless he observes that the animal or animals are frightened or indicate in some manner that they are disturbed because of his presence.
[3] The facts of the present case make it unique. The jurisprudence of this state is without a precedent. The fact that there are three angles to the picture remove it from the ordinary class of cases that involve collisions between animals and cars on the public highways. Here, we have a situation that should have impressed the operator of the rear automobile with the imperative necessity of acting with the utmost precaution. The location of the horse, its rate of speed, and of the Rogers car and its speed, must have indicated clearly to Williams that to pass the forward car when and in the manner he attempted, would put all three in close proximity to each other; that the horse would have to its left the Rogers car and be confronted with the Williams car moving toward him at a rapid speed. Under such circumstances, knowing the disposition of horses, was Williams warranted in assuming that the horse would not become excited and unmanageable, and would not do the unexpected? We do not think so. It is our opinion that the situation, fraught with dire possibilities, created by Williams' action in the respects mentioned, caused the horse to act as it did. His negligence in this respect was, in contemplation of law, the real cause of the accident and commits him to liability for its results.
The lower court, in its reasons for judgment anent this question, said:
"The action of the horse clearly caused the trouble, and if defendant did nothing to cause this action, and if he were acting in a reasonably prudent manner in attempting to pass the Ford just when he did, then he should not be held liable in damages. We all know that children and animals may be expected to do the unusual and unexpected.
* * * * * *
"What a driver must do is not to create any unusual situation, which might cause nervousness or fright in such animal. This is exactly what defendant did here. When he started to pull over he would, at least for a short while, appear headed directly at the horse, and this while travelingpretty fast. Then too this maneuver would place two cars approaching at one time, side by side, which may never have happened to the horse before, since a prudent driver should have slowed down, and waited a few seconds before passing the car ahead. Something surely caused the horse to scare. We could hardly think that the rider pulled him over into the road, nor would we conclude that an insect might have stung him just at this time. The fact that the horse was meeting two cars, one moving quite fast and which must at least pass very near him, instead of the usual one car on the far lane from him, could easily have caused the fright. Defendant brought about this *Page 816 
condition, and we do not think a reasonably prudent driver would have done so. Therefore, he is liable in damages."
We concur fully in this line of reasoning.
[4] It has often been held by this and other appellate courts of the state, that in an emergency a motorist is not, nor should he be, expected to make the same calm and accurate decision as he could and would otherwise make in an effort to avoid a collision. But this rule does not protect a motorist who because of his own negligence, brings about the emergency. It appears here that the Williams car was sixty feet from the horse when the brakes took effect. Skid marks demonstrate the correctness of this conclusion. While going this distance plus that covered between the time the horse's unruly action was observed by Williams (some thirty feet) and the time the brakes became effective, Williams pulled his car to his right not over five feet. To escape the impending collision it was imperative that he return to his (right) lane of the road behind the Rogers car. We can perceive of no good reason why this was not done while covering the mentioned distance. He did quickly exercise good judgment in applying the brakes and simultaneously therewith he should have cut his car to the right as far as it could go. Had he done this, the collision would have been averted.
It is true, the car could not have been brought to a stop within ninety feet or thereabout, but it is not true it could not have cleared the left lane within that distance, especially after its speed had been reduced from application of the brakes. All facts and circumstances considered, we feel warranted in holding that Williams was negligent in not regaining the right side of the road in time to avoid running over the boy, whose body was south of the meridian line.
[5] The plea of contributory negligence is not well founded. Because the boy lost control of the animal does not imply that he did something to bring about that result. Surely, under the existing circumstances, he would not have unwittingly reined the horse upon the highway nor by any other act caused it to go from a position of safety to one of extreme danger.
Plaintiffs were married on February 11, 1923. Nine children blessed their union, six of whom are living. However, marital infelicity marred their conjugal relations, and they have been living apart for several years. It had been two or three years since Mr. Joyner lastly visited the family from his home in Mississippi. The deceased son visited him there from August to November, prior to his death. At the time of the accident suit for divorce by the wife was pending in West Carroll Parish. Judgment in her favor was rendered therein a few days thereafter.
Mrs. Joyner, with her unmarried children, lived on a farm and from its produce earned a living for them and herself. The deceased son labored thereon and rendered such assistance as his years and experience allowed. He contemplated enlisting in some branch of the military service of his country and thereby enable himself to provide his mother with financial assistance he otherwise would not be in a position to render.
Mr. Joyner made no contribution to the family's financial support, but did "help" the deceased son when he visited with him. Because of the foregoing facts and conditions the lower court in fixing the awards discriminated heavily in favor of the mother.
The impact broke many bones of and crushed the boy's body in several places. He was instantly rendered unconscious but after being pulled from beneath the car and cold water being applied to his face, revived sufficiently to give his name and residence. From then on he was unconscious to the end. Obviously, very little damages for pain and suffering by him are recoverable. It is equally obvious that his tragic death fell most heavily upon the mother, who without any help, financially or otherwise, from the father, has valiantly carried on to the utmost of her ability, cared for, nurtured and supported this large number of helpless children. No doubt her grief and sorrow are far reaching. She has sustained extensive loss in a material way on account of the horrible death of this dutiful son. *Page 817 
[6, 7] The award of damages in favor of Mrs. Joyner appears to be fair. We could give no good reason for altering same although appellants urge us to do so. So far as concerns the award in favor of Mr. Joyner, we think it is excessive. The foregoing resume of his conduct should convince anyone that his love and affection for the dead boy and his interest in him was not nearly so great as it should have been. We believe that $1,000.00 will adequately compensate him. See Poindexter v. Service Cab Company et al., La. App., 161 So. 40; Russell v. Taglialavore et al., La. App., 153 So. 44.
For the reasons herein assigned, the judgment in favor of Mrs. Joyner, appealed from, is affirmed; and the judgment in favor of Mr. Joyner is amended by reducing the amount to $1,000; and as thus amended, said judgment is affirmed. All costs are taxed against the defendants.