BONDER, Justice.
 

 On application of plaintiffs, we granted writs to review a judgment of the Court of Appeal, Second Circuit, denying plaintiffs damages for the death of their twelve year old son who was instantly killed when he fell from a horse on the Simmesport-Atchafalaya River Bridge.
 

 Plaintiffs-relators brought an action for damages for the death of their son alleging that Russell Bourgeois, the driver of a truck with trailer van attached was negligent in releasing his air brakes, in not stopping his truck to allow relators’ two' sons, Rhett, age twelve, and Winnfield, age fourteen, astride horseback, to cross the bridge and that this negligence was the proximate cause of the death of Rhett. In defense to the suit, Bourgeois and his insurer aver that the accident was unavoidable and deny that Bourgeois was negligent for not having stopped his truck. In the alternative, defendants-respondents aver that Rhett was contributorily negligent since he had been warned by his parents not to ride his horse across the bridge but to lead him across.
 

 After trial, the lower court concluded that the accident was due to the negligence of Bourgeois in not bringing his truck to a full halt on the bridge, rejected the defendant’s plea of contributory negligence, and awarded judgment in favor of plaintiffs for damages in the amount of $20,750. On appeal, the court of appeal reversed this judgment finding that there was no negligence on the part of Bourgeois, the driver of the truck. The matter, having been brought up by certiorari, is now presented for our determination.
 

 According to the record, Rhett Plauche, age twelve, and his brother, Winnfield Plauche, age fourteen, were riding their horses in the direction of Point Coupee Parish. They had been instructed by their parents to lead the horses across the bridge to A1 Glynn’s plantation for pasture. These two boys entered the Simmesport-Atchafalaya Bridge, and, when in the middle of the first enclosed steel span, observed a large truck-trailer entering the bridge from the opposite side. At this point it is necessary to digress in order to understand
 
 *697
 
 clearly the physical facts that are so important to a decision herein on the question of the negligence of Bourgeois.
 

 The Simmesport-Atchafalaya Bridge is approximately one-half mile long and sixteen feet, seven inches wide. For a considerable distance the sides of the bridge have steel guards on each side, after which there are five long spans of steel, concrete and overhead iron enclosures. Originally this bridge was constructed in the 1920’s for railroad use but it was converted to motor vehicular traffic and steel runways were laid to provide two lanes on the planked floor. The bridge flooring sits high over the Atchafalaya River to provide for river traffic and the bridge has a tunnel-like appearance. Because of the steel runways on the planked flooring, the sound of wheels on an automobile make a very loud clanking noise. It was correctly noted by the court of appeal that the appearance of the bridge and the manner in which it is constructed have an important bearing on the issues presented herein.
 

 The truck-trailer, driven by Russell Bourgeois, is forty feet long from bumper to bumper and between seven and one-half to eight feet wide with four sets of dual wheels on each side, and the truck at the time of the accident was heavily loaded. The hitting of these dual wheels on the steel runway plates of the bridge produced a very lond clanking noise.
 

 The truck was traveling at a rate of about twenty miles an hour when Bourgeois observed the Plauche boys on horseback approaching from the opposite direction. According to the testimony of Bourgeois, he slowed down to between five and seven miles an hour by lifting his foot from the accelerator and at this speed passed the boys who were riding horseback single file. When the boys passed the cab of the truck, Bourgeois increased his speed.
 

 A car driven by Alfred Reason was forty or fifty yards behind Bourgeois and the truck. Reason testified that he also decelerated his speed and coasted behind the truck. A car driven by Lacombe was approaching the bridge behind the boys on horseback and Lacombe stopped to let the boys negotiate the bridge.
 

 According to the testimony of the two disinterested witnesses, Reason and Lacombe, when the boys approached the end of the trailer-truck, at a point some three hundred thirty-nine feet from the western end of the bridge, Rhett’s horse gave a sudden, sharp jump against the railing which caused Rhett to fall to his death from a broken neck.
 

 Winnfield testified positively that when they reached the middle of the truck there was a hissing noise like the sound of air brakes being released, and it was then that Rhett’s horse jumped against the rail throwing Rhett so that he hit his head against the trailer part of the end of the truck
 
 *699
 
 before falling to the ground dead. Reason and Lacombe testified that they did not see the boy strike his head on the truck and they did not see any sign of brakes being applied nor hear any sound of their release. It must be remembered that Reason was some forty to fifty yards behind Bourgeois’ truck and Lacombe was stopped at the approach to the bridge, some three hundred feet away. Their testimony is negative in character and does not necessarily destroy the positive testimony of Winnfield that the brakes were released and the hissing sound frightened the horse.
 

 It was the conclusion of the court of appeal that the acts of Bourgeois were the acts of a reasonable and prudent driver and that the accident was an unavoidable one. In so holding, the court of appeal relied upon the law in Louisiana in regard to a motorist meeting a passing rider on horseback and summed up this law thus (see 92 So.2d 298, 301) :
 

 “The rule of conduct now imposed upon a motorist is that he is not required to reduce his speed at all when meeting or passing animal drawn vehicles or mounted horses on the highway unless he observes that the animal or animals are frightened or indicate in some manner that they are disturbed because of his presence. This is to say that a driver must not create any unusual situation, which might cause nervousness or fright in such an animal. At the same time it must be realized that the action of a horse may not always be predicted with certainty. Persons with knowledge of the characteristics and dispositions of horses and who have had experience in handling them, know that regardless of their gentleness they never become absolutely immune from fright. Smith v. Louisiana Power & Light Company, La.App.1935, 158 So. 844; Joyner v. Williams, La. App.1948, 35 So.2d 812. With reference to the mounted horse and its rider, the duty of a motorist is aptly set forth in 60 C.J.S., verbo Motor Vehicles, § 381, p. 935: ‘* * * He is under a like duty to exercise care with respect to a person riding a horse, and, if he sees or in the exercise of ordinary care should see that the horse is in a fretful and uncontrollable condition, it is his duty to use ordinary care to prevent his vehicle from further frightening the horse or colliding with him, and actually to stop his vehicle rather than to risk the most probable danger of collision by proceeding.’ ”
 

 The court of appeal correctly stated the law but fell into error in applying this law to the facts of the present case. This is not the usual situation of a motorist passing an animal on the open highway and the general rule regarding
 
 *701
 
 perception of fright in the animal is not applicable. The court of appeal recognized that a driver must not create any unusual situation which might cause nervousness or fright in an animal. We think that in the present case the defendant did create such an unusual situation. The physical facts such as the high enclosed structure of the bridge, the clanking noise of the dual wheels of the fully loaded truck on the steel runways, the size of the truck in height and width, the confinement of the horse in a small, narrow space by the large moving truck, and the release of the air brakes (which we are convinced from the testimony did happen), are all factors which caused the horse to shy and throw its rider. These factors were known to Bourgeois and his failure to stop his truck created the unusual situation which caused fright and nervousness in the animal, leading to the resulting accident. We cannot conclude that the acts of Bourgeois were the acts of a reasonable and prudent man and we, therefore, conclude that he was guilty of negligence in not bringing his truck to a halt prior to passing the horses. It appears that these boys crossed this bridge on other occasions and that all the motorists stopped, thus evidencing that a reasonable and prudent person recognized that the animals might be frightened and cause injury.
 

 Respondents contend that if Bourgeois is negligent then, in the alternative, Rhett was contributorily negligent since he had been warned by his parents not to cross the bridge on horseback and that if he did so he was given specific instructions to lead the horse.
 

 The general rule in regard to the contributory negligence of children is stated in 38 American Jurisprudence, Verbo Negligence, para. 204, page 884 thus :
 

 “Generally speaking, children are required to exercise ordinary care to avoid injuries to themselves. The fact that a child does not have as mature judgment as an adult does not excuse it for not exercising the judgment and discretion which it does have, or for heedlessly rushing into known dangers. * * * In determining whether a child has been negligent in a matter involving its own safety, it is not held responsible for the exercise of more care than reasonably can be expected of a child of its maturity and capacity. There is a distinction between adults and children in respect of the attention given to the personal equation in determining contributory negligence. The rule for determining whether an adult exercised due care for his own safety sets up as a standard the care ordinarily exercised by persons of intel
 
 *703
 
 ligence and discretion.
 
 As to the child plaintiff, however, the caution required is determined according to the maturity and capacity of the plaintiff under the particular circumstances of the case.”
 
 (Italics ours.)
 

 It is stated in an annotation appearing in 174 A.L.R. at page 1134 that contributory negligence in regard to children nine to thirteen years inclusive, the question is not whether a child in this age group is capable of any negligence at all, but whether he is capable of appreciating the particular danger with which he is confronted at the time of his injury. In the case of Cook v. Louisiana Public Utilities Co., La.App., 19 So.2d 297, 298, the court found that a boy of twelve years of age with average intelligence was not contributorily negligent in touching a hanging live wire even though he had been warned by a younger child of the danger. In the Cook case the court said: “It may well be that a boy ten or twelve years old could be said to be guilty of contributory negligence in conducting himself in the face of a rather common danger such as, for instance, the fast approach of an automobile on the highway or a city street, or a train on a railroad track, whereas in his conduct in relation to certain objects he knows nothing about or does not appreciate the dangers involved in coming in contact with them, he should not be held to the same standard of conduct as an adult.”
 

 In a similar case, Ledet v. Lockport Light & Power Co., 15 La.App. 426, 132 So. 272, a boy of twelve was held not to be contributorily negligent for touching a live wire which caused his death, the court saying that to constitute contributory negligence it must be shown that the boy voluntarily and unnecessarily exposed himself to the danger.
 

 In Mitchell v. Illinois Cent. R. Co., 110 La. 630, 34 So. 714, 98 Am.St.Rep. 472, a boy of twelve was injured when he crossed railroad tracks while a “running switch” was being made. The court held that he was not contributorily negligent since he is not to be held to the same degree of care, prudence and circumspection that one would except of an adult.
 

 In the case of Katsikas v. Manchester Street R. Co., 90 N.H. 21, 3 A.2d 821, it was held that three girls aged ten, twelve, and thirteen could not be held guilty of contributory negligence as a matter of law in riding on a horse in the space between street-car tracks located on the side of a highway at night. The court therein pointed out that the fact that they were told not to ride the horse except in the pasture was merely one circumstance to be considered on the issue of their care, and that their ages and lack of experience were also to be considered.
 

 
 *705
 
 In the present case it must he determined if Rhett was contributorily negligent in riding his horse over the bridge herein. The mere fact that Rhett had been warned by his parents not to ride across the bridge but to lead the horse is only one circumstance and the test whether Rhett appreciated the danger of these warnings and in reckless disregard chose not to heed them. Cook v. Louisiana Public Utilities Co., La.App., 19 So.2d 297; Ledet v. Lockport Light & Power Company, 15 La.App. 426, 132 So. 272. In order to constitute contributory negligence Rhett must have done something that exposed him to danger and he must have acted knowingly and heedlessly with reckless disregard for the consequences.
 

 The record discloses that Rhett and his brother had ridden over the same bridge on horseback on at least three other occasions without mishap. Winnfield testified that on these occasions cars stopped until they cleared the bridge.
 

 It is true that a child of twelve under our jurisprudence can be guilty of contributory negligence. McGlothurn v. Louisiana & A. R. Co., D.C., 76 F.Supp. 848; O’Pry v. Berdon, La.App., 149 So. 287; Rodriguez v. Abadie, La.App., 168 So. 515; Fontenot v. Freudenstein, La. App., 199 So. 677; Jenkins v. Firemen’s Ins. Co. of Newark, La.App, 83 So.2d 494; Marquette v. Cangelosi, La.App., 148 So. 88. But such a child’s caution must be judged by his maturity and capacity to evaluate circumstances in each particular case, and he must exercise only the care expected of his age, intelligence and experience. Thus, a child ten years and nine months old jumping on a bridge, or even walking upon it after it is in motion is negligent. Cusimano v. City of New Orleans, 123 La. 565, 49 So. 195. Likewise a boy thirteen years old was held to be contributorily negligent when he put his head into an elevator shaft causing his death. Marquette v. Cangelosi, supra. But as can be seen, these cases exhibit sudden danger for which a child of that age ought to have knowledge. Herein the act of riding a horse across a bridge cannot be said to be such an imminent danger so as to charge the deceased boy, Rhett Plauche, with contributory negligence. In other words, the act was not so inherently dangerous that the boy should have known that some injury would necessarily result. The degree of caution expected of a twelve year old boy accordingly varies with the circumstances of each given case.
 

 In our opinion there was nothing inherently dangerous in crossing the bridge on horseback, it had been done before by Rhett and his brother and probably by many others since the bridge was
 
 *707
 
 the only access to the Point Coupee side for many miles.
 

 From the facts presented herein, we conclude that Rhett was not contributorily negligent.
 

 It has been pointed out in brief filed in this Court that although there is no dispute as to quantum of damages relator inadvertently omitted a demand for legal interest and that under LSA-R.S. 13:4203 and Le Blanc v. New Amsterdam Casualty Company, 202 La. 857, 13 So.2d 245 legal interest accrues as a matter of right from date of judicial demand on actions ex delicto and hence legal interest should be allowed from June 18, 1955.
 

 For the reasons assigned, the judgment of the Court of Appeal, Second Circuit is reversed and set aside. The judgment of the district court is reinstated and amended so as to allow legal interest from the date of judicial demand and, as thus amended, the judgment of the district court is affirmed at cost of the defendants-respondents.
 

 PIAMITER, J., concurs in the decree.
 

 SIMON, J., concurs in part and dissents in part.
 

 HAWTHORNE, J., dissents.