GLADNEY, Judge.
This suit is in tort for damages arising from personal injuries received by Mrs. Clara A. Edelen on the afternoon of October 17, 1963 when she was thrown from her horse. By stipulation of the parties, other defendants have passed out of the case and Zurich Insurance Company remains as the sole defendant. The trial was had on the merits and judgment rendered in favor of the defendant rejecting the demands of plaintiffs and the latter have appealed.
The essential facts were established without serious controversy. Mrs. Edelen at the time of the accident was astride her horse “Flicka” and riding along the side of a gravel road in Ouachita Parish proceeding in the direction of her home which was approximately two hundred yards distant. Between ditches the road was from twenty to twenty-two feet and at the time of the accident the road was undergoing grading with the result that at the scene of the accident and for some distance in either direction dirt and gravel had been piled in the middle of the road extending into the eastern lane of travel and the pile of dirt was from two to five feet wide and from two to three and a half feet high. Along the western edge of the road the ditch was filled with weeds, brush and undergrowth and was approximately two feet or more in depth. The horse “Flicka” had been owned by Mr. and Mrs. Edelen for four or five years prior to the accident, was of a very gentle nature and had been used in farm work and ridden by various people including Mrs. Edelen at least twice a month. Just before the accident Mrs. Ede-len, mounted upon her horse, was proceeding in a southerly direction as close to the western edge of the roadway as feasible. Between the ditch and the pile of dirt there was a width of open road for vehicles traveling in the west lane of travel of approximately twelve feet. The accident occurred while a school bus, seven feet eight inches in width, driven by Mrs. C. W. Evans, was in the act of passing the horse and its rider.
The testimony of Mrs. Edelen discloses that she observed the approach of the bus from her rear and pulled the horse over to the right of the road so that the bus could pass. She testified that she considered that there was sufficient room between the ditch and the pile of dirt for the bus to pass without incident; and that the bus was traveling at a slow speed and she did not expect or anticipate that the horse would *578 be frightened or cause any trouble as the bus was passing. Suddenly, however, after the bus had partially passed the horse, it became frightened, reared up, and threw Mrs. Edelen into the ditch. She received injuries to her arm and shoulder. The school bus was stopped and Mrs. Edelen was taken to her home.
The position taken by counsel for plaintiff is that the accident would not have happened but for the negligent act of Mrs. Evans in undertaking a dangerous passing maneuver when there was not sufficient room to do so and at a time when she must be charged with the knowledge that to confine a horse in an extremely small, closed area when the vehicle is making loud noises Mrs. Evans should have foreseen the probability that the animal would become frightened and therefore the defendant insurer should be held legally accountable for that negligence. Cited in support of the position so taken by counsel for plaintiffs are: LSA-R.S. 32:22; Plauche v. Consolidated Companies, 235 La. 692, 105 So.2d 269 (1958), reversing 92 So.2d 298; Joyner v. Williams, La.App., 35 So.2d 812 (2nd Cir. 1948); Juhas v. American Casualty Company of Reading, Pa., La.App., 140 So.2d 676 (4th Cir. 1962) and Smith v. Louisiana Power and Light Company, La.App., 158 So. 844 (2nd Cir. 1935).
After a review of the cited cases we have reached the conclusion that they are in-apposite by reason of the particular facts of the instant case. LSA-R.S. 32:22 was placed in our motor vehicle statute by Act 310 of 1962 and provides:
“Every person riding an animal or driving any animal-drawn vehicle upon a roadway shall be granted all of the rights and be subject to all of the duties applicable to the driver of a vehicle by this Chapter, except those provisions which by their very nature can have no application.”
The Supreme Court in Plauche approved the statement of the law in Louisiana in regard to a motorist meeting a rider on horseback as summed up by the Court of Appeal opinion under review which stated:
“The rule of conduct now imposed upon a motorist is that he is not required to reduce his speed at all when meeting or passing animal drawn vehicles or mounted horses on the highway unless he observes that the animal or animals are frightened or indicate in some manner that they are disturbed because of his presence. This is to say that a driver must not create any unusual situation, which might cause nervousness or fright in such an animal. At the same time it must be realized that the action of a horse may not always be predicted with certainty. Persons with knowledge of the characteristics and dispositions of horses and who have had experience in handling them, know that regardless of their gentleness they never become absolutely immune from fright. Smith v. Louisiana Power & Light Company, La.App.1935, 158 So. 844; Joyner v. Williams, La.App. 1948, 35 So.2d 812. With reference to the mounted horse and its rider, the duty of a motorist is aptly set forth in 60 C.J.S., verbo Motor Vehicles, § 381, p. 935: ‘ * * * He is under a like duty to exercise care with respect to a person riding a horse, and, if he sees or in the exercise of ordinary care should see that the horse is in a fretful and uncontrollable condition, it is his duty to use ordinary care to prevent his vehicle from further frightening the horse or colliding with him, and actually to stop his vehicle rather than to risk the most probable danger of collision by proceeding.’ ” [105 So.2d 271, 272]
The disagreement of the Supreme Court therein was due to the application of the law as above stated to the facts of the case. The Court then proceeded to hold Bourgeois, the driver of the truck therein involved, guilty of negligence in not bringing his truck to a *579 halt prior to passing the horses. The reason for this conclusion was that the accident occurred upon a combination rail and highway bridge which consisted of a high, enclosed structure that produced clanking noises from the dual wheels of the fully loaded truck on the steel runways and this, together with the size of the truck in height and width, the confinement of the horse in a small, narrow space by the large moving truck, and the release of the air brakes, were factors which caused the horse to shy and throw its rider.
In the Joyner case this court held the motorist liable where he increased his speed to about fifty miles an hour in order to pass an automobile going in the same direction on a highway eighteen feet wide although a boy was riding a horse on the left shoulder of the highway. The horse became frightened and came on to the highway so that the motorist could not avoid striking the horse and boy. The organ of the court recognized the rule of law to be that a motorist is not required to reduce his speed at all when meeting or passing animal-drawn vehicles or mounted horses on the highway, unless he observes that the animal or animals indicate in some manner that they are disturbed because of his presence. Holding that the facts of the case were unique, the court said:
“The jurisprudence of this state is without a precedent. The fact that there are three angles to the picture remove it from the ordinary class of cases that involve collisions between animals and cars on the public highways. Here, we have a situation that should have impressed the operator of the rear automobile with the imperative necessity of acting with the utmost precaution. The location of the horse, its rate of speed, and of the Rogers car and its speed, must have indicated clearly to Williams that to pass the forward car when and in the manner he attempted, would put all three in close proximity to each other; that the horse would have to its left the Rogers car and be confronted with the Williams car moving toward him at a rapid speed. Under such circumstances, knowing the disposition of horses, was Williams warranted in assuming that the horse would not become excited and unmanageable, and would not do the unexpected? We do not think so.” [35 So.2d 812, 815].
We do not consider a discussion of the Juhas v. American Casualty Company appropriate forasmuch as the facts do not involve a horse or horse-drawn vehicle. More particularly it deals with the question of contributory negligence of a young girl. Nor do we think the facts involved in Smith v. Louisiana Power and Light Company analogous. Therein a motorist was held liable where his vehicle, a truck, drove dangerously close to a wagon drawn by two mules and frightened the mules. This fact was held to be the cause of the damage. The court was presented with a case wherein the presence of a road grader in addition to the wagon required the truck to pass dangerously close to the wagon and mules and it was found that the truck was traveling at a rate of speed of thirty miles per hour or better without lessening its speed at any time while passing. When the truck arrived at the place of the accident the grading outfit had the truck’s entire right hand side of the road blocked and the wagon only twenty feet south of it had the left side partially blocked. These facts caused a quick maneuver of the truck which could well be expected to frighten the animals.
In the instant case the trial court held in arriving at its decision: “Factually this court finds that the horse ridden by Mrs. Edelen was not frightened, nor did it exhibit fright prior to the accident. The Court finds that Mrs. Edelen acted deliberately in riding over to the side of the road and deliberately in inviting the school bus to pass at the point of the accident. Mrs. Edelen stated that she did not consider the passing of the school bus any danger to her or her horse. No dangerous reaction from the horse was apparent or even dircernible *580 prior to the accident. Certainly the plaintiff, Mrs. Edelen, was in a better position to recognize danger and, therefore, obligated to take defensive measures or give warning.
“Applying the law as stated in the Plauche case to the facts, the defendant herein did nothing to create any unusual situation which could and would cause nervousness or fright in the animal ridden by plaintiff. Defendant was not negligent in attempting to pass under the circumstances then and there existing when this passing movement was made in the careful and prudent manner as testified to herein.”
We find ourselves in complete accord with the findings of fact and reasons of judgment as advanced by the learned judge of the trial court.
Accordingly the judgment from which appealed is affirmed at cost of plaintiff.