341 So.2d 1386 (1977)
Jimmy HANDY et al., Plaintiffs-Appellees,
v.
Dewey LeJEUNE et al., Defendants-Appellants.
No. 5781.
Court of Appeal of Louisiana, Third Circuit.
January 31, 1977.
Rehearing Denied March 2, 1977.
Writs Refused April 22, 1977.
*1387 Edwards, Stefanski & Barousse by Homer E. Barousse, Jr., Crowley, for defendants-appellants.
Gravel, Roy & Burnes by T. Gerald Henderson, Alexandria, for plaintiffs-appellees.
Before HOOD, DOMENGEAUX and WATSON, JJ.
WATSON, Judge.
Defendants, Dewey LeJeune, The Permian Corporation and Employers Casualty Company, have appealed from a trial court judgment awarding plaintiffs, Jimmy and Virgie Handy, a total of $51,190 for the loss of their 14-year-old son, Albert Handy. Plaintiffs, Jimmy and Virgie Handy, have answered the appeal, asking that the amount awarded be increased to $100,000. We affirm.
The accident occurred on May 16, 1975, when a truck owned by the Permian Corporation and driven by its employee, Dewey LeJeune, collided with a small horse ridden by Albert Handy. Employers Casualty Company is the liability insurer of the Permian Corporation. The trial court concluded that both Albert and LeJeune were negligent but that LeJeune had the last clear chance to avoid the accident. Each of the parents was awarded $25,000 for the loss, and the father was awarded the funeral expenses of $1190.
The issues are:
1. whether the trial court's conclusion that LeJeune was negligent is manifestly erroneous;
2. whether there is manifest error in the finding of contributory negligence on the part of Albert Handy; if none, whether last clear chance is applicable; and
3. whether the amounts awarded plaintiffs are so inadequate as to constitute an abuse of discretion.
*1388 Defendant LeJeune was the only surviving witness of the accident. He was driving north in a Mack truck on Louisiana Highway 95, at a speed of 45 m.p.h. The accident occurred about a mile and a half north of Church Point where the highway is straight and there are no obstructions to vision. It was daytime; the weather was clear. LeJeune said it was "hard to say" but estimated when deposed that he was approximately 100 yards from Albert and his horse when he first saw them and immediately observed that the horse was "spooked" (TR. 31). His testimony at trial also establishes that he knew the horse was scared when he first saw it, although parts of the testimony out of context give a contrary impression. Albert and the horse emerged from a pasture gate (located 200 feet from the point of impact) onto the south shoulder and then continued south. LeJeune reduced his speed. When he was about 50 yards from the boy and the horse, he blew his horn and applied his brakes. LeJeune testified that Albert Handy did everything he could to control his mount, but the horse kept on coming toward the middle of the road. Albert was riding bareback with a rope halter; he had the head of the horse pulled to the right, but the frightened animal did not respond. The impact occurred in the northbound lane, squarely in the middle of the truck. The horse was thrown into the southbound lane 89 feet from the point of impact, and Albert's body came to rest in the northbound lane behind the truck. The unloaded truck, 514" long, left 144 feet of skidmarks before the collision and 118 feet afterward.
Albert died on his birthday; he was born May 16, 1961. The horse had been owned by the Handys about a year. Albert rode the horse frequently, and the horse had never given him any trouble before the accident.
Mrs. Virgie Handy testified that she and her husband had had 11 sons and 6 daughters but they had lost 5 girls and 3 boys or eight of the 17, the last loss being Albert. Albert was a good, smart boy, who liked the junior high school he attended in Church Point. He was the Handys' baby boy. It was stipulated that Jimmy Handy's testimony about the parents' loss would be substantially the same as that of Mrs. Handy.
Dewey LeJeune indicated that he first observed the boy and the horse when he was about 300 feet away. This estimate of distance is too low. The gate from which the horse emerged was 200 feet from the point of impact; the truck skidded 144 feet prior to the point of impact; and LeJeune admitted that he had traveled half the distance between them when he commenced braking. When LeJeune discovered Albert's perilous situation, he had an opportunity to avoid the accident by immediately bringing his truck to a stop. The accident would not have occurred but for his failure to do so, which was a cause in fact of Albert's death. Since LeJeune realized at first sight that the horse was not under control, he was under a duty to avoid colliding with or further frightening the animal. His admitted failure to stop when he saw the "spooked" horse and rider was a breach of this duty. LeJeune's delayed reaction constituted negligence under the circumstances. A motorist's duty vis-a-vis a frightened horse is set out in Plauche v. Consolidated Companies, 235 La. 692, 105 So.2d 269 (1958), where the court quotes 60 C.J.S. Motor Vehicles § 125, p. 718 as follows:
"He is under a like duty to exercise care with respect to a person riding a horse, and, if he sees or in the exercise of ordinary care should see that the horse is in a fretful and uncontrollable condition, it is his duty to use ordinary care to prevent his vehicle from further frightening the horse or colliding with him, and actually to stop his vehicle rather than to risk the most probable danger of collision by proceeding." 105 So.2d 272.
The trial court's reasons for judgment rely on Plauche in finding LeJeune negligent and state:
"LeJeune admitted that he saw the horse was `spooked,' yet he continued to proceed down the road for a distance of 50 yards before blowing his horn or applying *1389 his brakes. He, therefore, breached his duty to avoid collision with Albert and his horse by failing to stop his truck at the first sign that the boy was unable to control his horse." (TR. 43)
This analysis is not manifestly erroneous, and is supported by the evidence.
The trial court found Albert negligent for failure to control his horse. In view of the fact that Albert was riding without a saddle or bridle with only a rope halter to manage his mount, we agree that Albert was guilty of contributory negligence. Albert's efforts to steer the horse away from the highway were negated by his lack of proper equipment. Contributory negligence on the part of Albert Handy was established by reasonable evidence. Compare the contrary finding in Joyner v. Williams, 35 So.2d 812 (La.App. 2 Cir. 1948), where there is no indication that the rider was not properly equipped since the opinion speaks of the horse being "reined".
Finding both LeJeune and Albert negligent the trial court proceeded to succinctly and correctly analyze the doctrine of last clear chance in light of the factual situation. We find the analysis to be legally sound and factually supported by the evidence. Therefore, we will quote with approval from the reasons for judgment (TR. 44-45) as follows:
"The last issue to be determined is whether LeJeune had the last clear chance to avoid the accident, despite Albert's contributory negligence. As stated by the Court in Ortego v. State Farm Mutual Automobile Insurance Co., 295 So.2d 593 (La.App. 3rd Cir. 1974), in order for plaintiffs to successfully invoke the doctrine of last clear chance, the evidence must clearly show:
`(1) That plaintiff was in a position of peril of which he was unaware, or from which he was unable to extricate himself;
`(2) that the defendant actually discovered or should have discovered, the plaintiff's peril; and
`(3) that at the time defendant actually discovered, or should have discovered, plaintiff's peril, defendant had a reasonable opportunity to avoid the accident.'
"Clearly, the evidence supports each of the three requisites. Albert was in a position of peril from which he could not extricate himself. He had tried to steer his horse out of LeJeune's path, but could not do so. LeJeune actually discovered Albert's peril when he noticed that the horse was `spooked' from a distance of 100 yards. LeJeune had a reasonable opportunity to avoid the accident, and could have done so, if he had applied his brakes when he first noticed that the boy could not control his horse." (TR. 44-45)
We agree with the trial court that the doctrine of last clear chance is applicable and that plaintiffs are entitled to judgment on that basis.
No abuse of discretion is shown in the award of $25,000 to each parent for the loss of the child plus the award of $1,190 to Jimmy Handy for funeral expenses. There is no merit to the answer to the appeal urging that the award is inadequate. LSA-C.C. art. 1934; Ogaard v. Wiley, 325 So.2d 642 (La.App. 3 Cir. 1976); Bitoun v. Landry, 302 So.2d 278 (La., 1974); Coco v. Winston Industries, 341 So.2d 332 (La., 1976).
For the foregoing reasons, the judgment of the trial court herein is affirmed. All costs of this appeal are taxed against defendants-appellants.
AFFIRMED.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I cannot agree with the majority that Dewey LeJeune, the driver of the truck, was negligent or that he had the last clear chance to avoid the accident.
My colleagues find that LeJeune "knew the horse was scared when he first saw it," although they admit that parts of his testimony "give a contrary impression." They *1390 concede that LeJeune reduced his speed when he first saw the horse, but they hold that he did not apply his brakes until "he was about 50 yards from the boy and the horse." Based solely on the finding that defendant delayed for a fraction of a second in applying his brakes, my colleagues conclude that he was negligent or that he had the last clear chance to avoid the accident.
With great respect, I suggest that the majority has drawn some erroneous conclusions from the established facts. One incorrect conclusion, for instance, is that LeJeune delayed for even an instant in applying his brakes after he observed that the horse was "spooked." LeJeune is the only living eye witness to the accident, and his testimony as to how it occurred is uncontradicted. It is apparent even from the written record that that defendant was trying to be fair and accurate in his testimony, and I am sure that my colleagues will not take issue with that statement.
The defendant driver of the truck testified that when young Handy and his horse first came upon the shoulder of the highway, the horse began running at a gallop in a southerly direction on the west shoulder of the road. I think LeJeune made it clear that he did not detect that the horse was scared or unruly when it first entered the highway, but that he nevertheless reduced his speed immediately when the horse and rider came into his view, explaining that he did so "to prepare for a stop if I had to." After the horse had travelled a short distance south on the shoulder of the road, LeJeune then noticed that the boy was having trouble controlling the animal. As soon as he made that discovery he immediately applied the brakes of his truck with great force, causing all of the wheels of that vehicle to skid until it came to a complete stop. LeJeune's uncontradicted testimony is that he applied his brakes when he "saw the boy was in trouble." He stated that "when I saw he (the horse) was out of the boy's control, that's when I applied my brakes real hard."
Regardless of whether LeJeune noticed that the horse was scared when it first came upon the highway, or whether he made that discovery a moment later while the horse was running along the west shoulder of the road, the evidence is clear and unchallenged that he applied the brakes of his truck the instant he noticed that the boy was having trouble controlling the horse. I think my colleagues have erred seriously in ignoring the positive, uncontradicted testimony of the only eye witness to the accident that he applied his brakes the moment he detected that the boy was having trouble controlling the horse.
Another conclusion reached by the majority which I consider to be patently erroneous is that LeJeune did not apply his brakes until "he was about 50 yards from the boy and the horse." The physical facts, as found by my colleagues, show that the truck was a much greater distance than that from the horse and rider when the brakes were applied. The majority found, for instance, that the truck skidded a distance of 144 feet before it struck the horse. Allowing a minimal reaction time, it is apparent that the brakes of the truck were applied more than 50 yards (or 150 feet) before it reached the point of impact. The horse and rider, of course, were a substantial distance north of the point of impact, and the truck was more than 150 feet south of that point, when the brakes of the truck were first applied. The horse was running at a gallop in a southerly direction, and the truck was being driven north. The horse travelled a substantial distance south between the time the brakes of the truck were first applied and the time the horse and the truck collided. Considering the established physical facts, therefore, it is apparent that the truck was much more than 50 yards from the boy and the horse when LeJeune "blew his horn and applied his brakes."
The evidence does not show how fast the horse was running, nor does it show the average speed of the truck from the time the brakes were first applied until the collision occurred. The truck, however, was travelling at a speed of only 40-45 miles per hour before the horse entered the highway. *1391 The speed of the truck was then reduced, and thereafter the brakes were applied forcefully causing all of the wheels on the truck to skid 144 feet before the horse and the truck met and collided. The average speed of the truck must have been drastically reduced while it was skidding, and I think it would be unreasonable to conclude that the truck travelled much farther, or any farther, than did the horse during that brief period of time. It seems to me that the truck was at least 300 to 400 feet from the horse when the brakes of the truck were applied. The physical facts alone, therefore, show that the majority erred in holding that LeJeune "was about 50 yards from the boy and the horse" when he applied the brakes of the truck.
Assuming that LeJeune observed that the horse was scared the moment it emerged from the gate, as found by the majority, then I think the only duty which possibly could have rested on the truck driver was to stop his truck before it reached the gate. The evidence shows that the truck was brought to a complete stop at least 50 feet before the front of the truck reached the gate. I don't think LeJeune was required to anticipate that the horse would gallop south on the highway and collide with the truck at a point 200 feet south of the gate. Certainly, the driver was not obligated to apply his brakes sooner than appeared to be necessary, until he saw that the horse was running south on the highway and that it thus was rapidly reducing the distance within which the truck had to stop. LeJeune unquestionably applied his brakes very shortly after the horse started running along the shoulder of the road.
Finally, the evidence shows that the accident would have occurred even if LeJeune had applied his brakes the instant the horse and rider emerged from the gate and entered on the highway. The majority has found, correctly, that the truck left skid marks for a total of 262 feet. The tires on that vehicle were good, and the highway was hard surfaced and was dry. The investigating officer testified that all of the wheels on the truck skidded evenly and that the brakes obviously were in good condition. If we add to the length of the skid marks a minimal reaction time, it becomes apparent that in order for the driver to have avoided a collision in this case, it would have been necessary for him to have reacted and to have applied his brakes when the truck was more than 300 feet from the point of impact. The point of impact was 200 feet south of the gate. The accident thus would have occurred even if the brakes of the truck had been applied when that vehicle was more than 500 feet from the gate. There is no evidence, physical or otherwise, which could justify a holding that the truck was a greater distance than that from the gate when the horse and rider entered on the highway.
This was a tragic accident, and I sympathize with plaintiffs, as do my colleagues. I cannot agree with the majority, however, that LeJeune was negligent in any respect or that he had "a reasonable opportunity to avoid the accident."
For these reasons, I respectfully dissent.