DOMENGEAUX, Judge.
On October 11, 1968, at between 7:00 and 7:30 P.M., plaintiff and his wife, a co-plaintiff, were driving their 1968 Pontiac automobile on the highway running between New Iberia and St. Martinville, Louisiana. They were being followed by defendant, Paul Annaloro, who was driving his two-ton van type truck in the same direction. As they neared the point where Juarez Street intersects the highway upon *294 which they were travelling, plaintiffs passed an equestrian, Mike Romero, who was riding in the opposite direction along the highway, to the right of plaintiffs. Another automobile was stopped at the intersection awaiting an opportunity to negotiate a left turn, and the plaintiffs came to a gradual stop behind that vehicle. A few seconds later the Annaloro truck crashed into the rear of plaintiffs’ vehicle, thrusting it forward against the automobile in front of it, and sufficiently into the opposite lane for it to be struck in the front by an oncoming vehicle.
The plaintiffs filed suit against Annalo-ro, Mike Romero, and his father, Johnny Romero, as Mike was a minor, and Romero’s insuror, Allstate Insurance Company. Annaloro filed a third party demand against the Romeros and Allstate. The case was tried by a jury and resulted in a verdict finding both Annaloro and Romero negligent but further finding that the latter’s negligence was not a proximate cause of the accident. Thus Annaloro was cast for plaintiff’s damages, which the jury enumerated as being $310.66 for medical expenses, $3,950.00 for property damage, and $2,500.00 for pain, suffering and personal injuries to Broussard; and $3,000.00, presumably for pain, suffering, etc., to Mrs. Broussard. All demands against Allstate were dismissed. Apparently through inadvertence, the judgment did not dismiss the demands against the Romeros. This, however, is but a harmless error in view of our conclusion herein.
Plaintiffs appealed to this court, but failed to file their appeal bond in time and therefore their appeal was dismissed. Broussard v. Annaloro, 261 So.2d 91. Subsequently defendant Annaloro perfected an appeal to this court and defendants Romero and Allstate answered the appeal. Likewise, plaintiffs filed an answer to An-naloro’s appeal which, for reasons appearing at 265 So.2d 648, was dismissed by us. We therefore have before us only the appeals of the defendants, neither of which deal with the issue of quantum. Accordingly, we limit our discussion to the issue of liability.
The general circumstances surrounding the occurrence of the accident have already been set forth and we shall now delve into the particulars.
Plaintiff Broussard testified that he had been travelling along the highway for a considerable distance and that he was aware of Annaloro’s truck following behind him. He stated that when he stopped behind the automobile at the intersection, he brought his own car to a gradual stop, and looking in the rear view mirror he saw the truck some 100 feet behind him. All of the vehicles involved had their lights on, as it was almost completely dark, and he watched defendant’s lights approach him in a straight line of travel, never swerving out of his lane. He further stated that he never saw a horse anywhere in the area.
His wife, Mrs. Broussard, corroborated his testimony regarding the gradual slowing of his vehicle and, as did he, stated that they had not been stopped very long before they were struck from behind.
Defendant Annaloro testified that he has been driving the same route between New Orleans and Franklin, Louisiana, for some thirty-four years carrying fruit in his truck. On the evening in question, he said he was following behind plaintiffs at a speed of 40 miles per hour and at a distance of some thirty or forty feet. As he approached the intersection he spotted the horse exiting from the ditch that ran along the shoulder of the road, and it appeared to him that it was about to enter the highway. He therefore swerved to his left to avoid striking the horse and when he resumed his original path of travel it was too late to avoid striking the plaintiffs’ vehicle. He stated that had it not been for the approaching horse the accident would not have occurred.
He was corroborated in his testimony by that of one Leo Coleman, his employee, who was riding with him in the truck at *295 the time. Coleman, who was a most unsatisfactory witness due to extreme nervousness, differed significantly from Annaloro only in that he thought the horse to have been travelling in the same direction as was the defendant’s truck. (All of the other witnesses agreed that it was travel-ling in the opposite direction.
Further corroboration was provided by the testimony of John Moore, a 108 year old eye-witness. Moore said that he was standing in front of his home, at a distance of 210 feet from the side of the accident, facing the highway. He stated that he saw the equestrian travelling along the shoulder of the road carrying a light, and that he was never in the ditch. The horse was moving along approximately two or three feet from the highway, and as the truck approached, it suddenly turned its head toward the highway. The truck then swerved about a foot across the centerline, turned back into its lane of travel, and collided with the plaintiff’s automobile.
Mike Romero, who was IS years old at the time of the accident, testified that he was riding a very gentle 10 year old horse, half in the ditch and half on the shoulder of the road, against the oncoming traffic. He said he was shining his light away from the traffic and never got closer than seven feet to the concrete portion of the road. As to the occurrence of the accident, he stated that the truck passed him in a normal fashion and that he then heard the sound of brakes being applied and turned around to see the accident. He emphatically denied that the truck ever swerved to avoid him. He and his father, Johnny Romero, testified that he had been riding horses since the age of 5 and had been riding professionally for five or six years, being a licensed jockey in three states.
With this evidence before it the jury concluded, as aforesaid, that while both Annaloro and Romero were negligent, only the former’s negligence was a proximate cause of the accident. We can only speculate as to how that verdict was reached, but we suspect that the charges given by the trial judge may have had something to do with it. We refer specifically to the following instructions:
The jury is instructed that the Louisiana Statutes regulating the use of highways by animals is the same as those regulating its use by vehicles; and, should you find that the Romero horse was being ridden improperly in violation of Louisiana Statutes, you may consider this as evidence of negligence.
The Louisiana Statutes provide that any person riding an animal or driving an animal drawn vehicle upon a roadway shall be granted all of the rights and be subject to all of the duties applicable to the driving of a vehicle, except those provisions which by their very nature can have no application. It is for you to decide these facts. (Emphasis ours.)
The second paragraph of those instructions is taken, for all practical purposes, verbatim from LSA-R.S. 32:22, and is quite correct. The first paragraph, however, is misleading in its use of the word “highway” as is seen from a reading of LSA-R.S. 32:1(17) and (44) in conjunction with LSA-R.S. 32:22. Those other two paragraphs read as follows:
(17) “Highway” means the entire width between the boundary lines of every way or place of whatever nature publicly maintained and open to the use of the public for the purpose of vehicular travel, including bridges, causeways, tunnels and ferries.
(44) “Roadway” means that portion of a highway improved, designed or ordinarily used for vehicular traffic, exclusive of the berm or shoulder. (Emphasis ours.)
The comparison of these statutes make it clear that a horse being ridden on the shoulder or in the ditch adjoining a “roadway” is not subject to “all of the du *296 ties applicable to the driving of a vehicle”, but the jury was not given the benefit of LSA-R.S. 32:1(17) and (44).
Presuming a rational basis for the jury’s findings, we can only conclude from a reading of its verdict in conjunction with the instructions given it, that it accepted Romero’s version of the events over that of Annaloro, presumably rejecting the latter’s testimony regarding the proximity of the horse to the roadway, but that it found Romero negligent in riding his horse contrary to the flow of traffic and/or without proper lighting. This follows from the fact that had the jury believed the testimony of Annaloro and the two witnesses who supported it, i. e., that the horse caused him to swerve and made the accident unavoidable, the only logical conclusion it could have reached is that Annaloro was not negligent at all, and Romero’s negligence was the sole cause of the accident. In this connection we note another portion of the trial judge’s instructions, reading thusly:
The driver of an automobile who suddenly finds himself in a position of imminent peril, not created by his own negligence, and without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better way in avoiding an accident. Under such circumstances, the law does not require a driver to exercise such control or the same degree of care as is required of a person who’s had mental opportunity for the full exercise of judgment and reason.
In summary, we find no manifest error in the jury’s findings of fact and are therefore bound to affirm them. We do, however, consider the jury to have erred in its finding, probably based on a misinterpretation of the judge’s instructions, that Mike Romero was negligent. Any other result, it seems to us, would be fraught with inconsistencies.
For the above and foregoing reasons the judgment of the district court is amended insofar as it ascribes any negligence to Mike Romero, the same being now declared to have been free from negligence, and all claims against him, Johnny Romero, and Allstate being hereby dismissed, and as thus amended is affirmed. All costs in this and in the trial court are to be borne by Paul Annaloro.
Amended and affirmed.