365 So.2d 279 (1978)
Eric LeRoy MAYS and Gloria Johnson Mays, Plaintiffs-Appellees,
v.
AMERICAN INDEMNITY CO. and William R. Thomas, Defendants-Appellants.
AMERICAN INDEMNITY CO. and George L. Thomas, Plaintiffs in Reconvention-Appellants,
v.
Eric LeRoy MAYS and State Farm Fire and Casualty Co., Defendants in Reconvention-Appellees.
No. 13680.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1978.
Rehearing Denied December 13, 1978.[*]
Writ Refused February 9, 1979.
*280 Booth, Lockard, Jack, Pleasant & LeSage by James E. Bolin, Jr., Shreveport, for plaintiffs and defendant in reconvention-appellees, Eric LeRoy Mays.
Cook, Clark, Egan, Yancey & King by Gordon E. Rountree and Charles G. Tutt, Shreveport, for defendants and plaintiffs in reconvention-appellants.
Lunn, Irion, Switzer, Johnson & Salley by Harry A. Johnson, Jr., Shreveport, for State Farm Fire & Casualty Co.defendant in reconvention-appellee.
Before HALL, MARVIN and JONES, JJ.
En Banc. Rehearing Denied December 13, 1978.[*]
JONES, Judge.
Defendants American Indemnity Company and William R. Thomas, appeal a judgment awarding damages against them in favor of Eric LeRoy Mays and his wife, Gloria Mays, as a result of a collision between an automobile driven by William R. Thomas and a horse ridden by plaintiff Eric Mays. The judgment appealed from rejected the reconventional demand of the defendant insurer as subrogee for property damages to the automobile. The judgment also rejected the claim of George L. Thomas, owner of the car, who intervened seeking damages for the uninsured portion of the damages to his automobile which was driven by defendant Thomas. The intervenor appeals the judgment rejecting his claim.
The accident occurred at 11 A.M., January 18, 1976, a clear day in rural DeSoto Parish on U.S. Highway 171, approximately 3 miles north of Grand Cane, Louisiana. The highway runs in a generally north and south direction. The paved portion of the road is 24 feet wide providing north and south bound traffic each with a 12 foot wide lane. The road is straight and relatively level. There is a 6 to 8 foot shoulder located adjacent to the paved portion of the road and the distance between the edge of the paved portion and the fence located on the west side of the road which demarks the west right-of-way line of the highway is 38 feet. The area between the edge of the shoulder and the fence is grassy and contains no ditch and though not completely level, provides a suitable place upon which to ride a horse.
On the morning of the accident plaintiff, Eric Mays, riding his horse, Dusty, and his two young sons, ages 8 and 11, each on horseback, followed by his wife Gloria Mays, in a pick-up truck, entered U.S. Highway 171 on the west side at its intersection with Ranchland Acres Road and turned south and traveled a distance of approximately 1/3 of a mile before the accident occurred. Eric Mays and his two sons were riding abreast on the west shoulder of the road. Eric Mays was approximately 3 *281 feet from the edge of the pavement and his two sons were riding to his right. Gloria Mays was driving the truck along the west shoulder of the highway approximately 50 feet to the rear of her husband and two sons, and she had the front and rear emergency blinkers operational on the truck.
They had encountered no traffic on the highway prior to the circumstances surrounding the accident. There were three vehicles parked west of the shoulder of the road in the area of the accident, but the horseback riders had passed them and were approximately 50 feet south of these parked vehicles before the situation occurred which precipitated the accident.
Defendant, William R. Thomas, was operating a 1971 Buick, owned by his father, intervenor George L. Thomas, occupied by five passengers, southerly at a speed of approximately 55 MPH in the southbound lane on U.S. Highway 171 enroute to church in Mansfield. As Thomas approached the Mays family, another southbound automobile pulling a boat on a trailer, traveling in front of the Thomas vehicle, passed the plaintiff Eric Mays. About the time the car and boat reached Eric, the mare, Dusty, which Eric was riding, became excited and Eric lost control of her. The horse backed onto the hard surfaced portion of the southbound lane, requiring the car and boat trailer to pull to the left to avoid colliding with the horse. Thomas observed the horse acting up and backing from the shoulder to the paved portion of the southbound lane and slowed his vehicle. Eric Mays succeeded in getting his horse back onto the shoulder of the road, but he never succeeded in regaining control of her. Thomas observed the horse leave the hard surface of the southbound lane and go to the shoulder after the boat trailer and car pulling it had safely passed. Thomas made no further observation of the horse while it was on the shoulder of the road. He never observed the horse again until the horse reentered the southbound lane the second time, whereupon he applied his brakes, skidded 70 feet down the southbound lane and collided with the horse. The horse had continued to act up for a period of 10 to 15 seconds on the shoulder of the road and then again backed upon the paved portion of the highway, a distance estimated by one witness as 2 feet 7 inches, where she was struck by the right front portion and right windshield of the Thomas Buick. The investigating trooper placed the point of impact at the approximate center of the southbound lane.
At the time of the collision Thomas' left front wheel was across the center line of the highway. Following the collision, Thomas lost control and the vehicle traveled southeasterly across the northbound lane into a power transmission pole located on the back slope of the ditch on the east side of the highway. The power pole was broken by the impact of the vehicle. Thomas and two of his passengers received minor injuries in the accident. When the horse struck the right front of the Thomas car, Mays was thrown from the horse to the highway and was seriously injured. Because of injuries, the horse was destroyed.
The trial court found the negligence of Thomas in failing to maintain a proper lookout and in operating his vehicle at an excessive rate of speed under the circumstances then existing, was the sole cause of the accident. The trial court found plaintiff, Eric Mays, was free of any negligence.
Appellants assign as error: (1) the trial court's finding that Thomas was driving at an excessive rate of speed; (2) the trial court's application of the rules relating to horse-automobile collisions contained in Plauche v. Consolidated Companies, 235 La. 692, 105 So.2d 269 (1958) and the trial court's refusal to apply the rules relating to this type of accident contained in McDonald v. Traylor, 170 So.2d 157 (La.App. 2d Cir. 1964); (3) the trial court's finding that Eric Mays was not guilty of negligence for failing to yield the right-of-way to the Thomas vehicle and for darting into the path of the vehicle a split second prior to the accident; (4) the trial court's refusal to apply the statutory rules contained in LSA-R.S. *282 3:2803[1]; LSA-R.S. 3:2802[2]; and LSA-R.S. 3:2851[3] which prohibit horses from being on public highways.
The issues are: (1) was defendant Thomas guilty of negligence in failing to maintain a proper lookout, traveling at an excessive rate of speed under the circumstances and therefore not maintaining proper control of his car, or was he free from any negligence which contributed to the accident? (2) in the event Thomas is found negligent are plaintiffs barred from recovery because Eric Mays was guilty of contributory negligence in permitting his horse to enter into the path of the Thomas vehicle? (3) in the event Thomas was negligent and Eric Mays was also negligent, are the plaintiffs entitled to recover because Thomas had the last clear chance to avoid the accident? and (4) were plaintiffs entitled to recover for Mrs. Mays' loss of wages during the period she missed work while looking after her injured husband?
Eric Mays had a right to ride his horse upon U.S. Highway 171. LSA-R.S. 32:22:
Every person riding an animal or driving any animal-drawn vehicle upon a roadway shall be granted all of the rights and be subject to all of the duties applicable to the driver of a vehicle by this Chapter, except those provisions which by their very nature can have no application.
The right given to the horse rider under this section clearly excludes the applicability of the provisions contained in LSA-R.S. 3:2802; 3:2803 and 3:2851, which are contained in Title 3, Part 6 entitled Stock at Large On Public Highways. It is apparent that the statutes containing the prohibition against horses upon highways of the state are applicable to horses running at large and are not applicable to a mounted horse whose right to be upon the public highway is specifically provided for in LSA-R.S. 32:22.
The defendants contend that the decision of McDonald v. Traylor, supra, required the conclusion that Thomas is not guilty of negligence in the instant case. This decision is inapplicable because at the time the motorist engaged in her passing maneuver and prior thereto, there was no indication to the motorist that the horse which she was attempting to pass, and which suddenly darted in front of her, had prior to that time been out of control.

NEGLIGENCE OF DEFENDANT THOMAS
Our supreme court in the Plauche v. Consolidated Companies,[4] supra, expressly approved the following rules with regard to the duty of a motorist meeting or passing a rider on horseback:
"The rule of conduct now imposed upon a motorist is that he is not required to reduce his speed at all when meeting or passing animal drawn vehicles or mounted horses on the highway unless he observes that the animal or animals are frightened or indicate in some manner that they are disturbed because of his presence. This is to say that a driver must not create any unusual situation, which might cause nervousness or fright in such an animal. At the same time it must be realized that the action of a horse may not always be predicted with certainty. Persons with knowledge of the characteristics and dispositions of horses and who have had experience in handling them, know that regardless of *283 their gentleness they never become absolutely immune from fright. Smith v. Louisiana Power & Light Co., La.App. 1935, 158 So. 844, Joyner v. Williams, La.App.1948, 35 So.2d 812. With reference to the mounted horse and its rider, the duty of a motorist is aptly set forth in 60 C.J.S. verbo Motor Vehicles § 381, p. 935; ` * * * He is under a like duty to exercise care with respect to a person riding a horse, and, if he sees or in the exercise of ordinary care should see that the horse is in a fretful and uncontrollable condition, it is his duty to use ordinary care to prevent his vehicle from further frightening the horse or colliding with him, and actually to stop his vehicle rather than to risk the most probable danger of collision by proceeding.'" P. 271, 272.
Dusty was a gentle horse and had been ridden by former owners along the Barksdale flight line, and in congested traffic situations and never evidenced any excitability when subjected to the noise of an airplane or a motor vehicle. The plaintiff, who had only owned the horse five weeks, had never ridden her under circumstances where she was subjected to the noise of traffic. He testified that the horse was gentle and easily controlled. She had been ridden by children with no difficulty. There is no way to determine with absolute certainty what spooked Dusty on the day of her fatal accident, but in all probability, it was the traffic noise created by the approaching and passing of the vehicle towing the boat. Dusty never ceased to be excited nor returned to her prior gentle nature after she first moved onto the paved surface of the road. She thereafter twisted, danced, pranced, backed up and moved suddenly along the shoulder of the road, and Mays never again obtained control of her.
Thomas observed the mare acting up as she first went into the southbound lane and continued to observe her until she returned to the shoulder, after which time he failed to make any further observation of her until she returned to the paved portion of the highway abruptly in front of him. There was no obstruction of Thomas' vision straight down the highway to the shoulder of the road to which Dusty had returned. If he had continued his observation of her, he would have been aware by her conduct that she was in a "fretful and uncontrollable condition". Instead of making these observations which he could and should have made, he testified that following the horse's return to the shoulder of the road, that he accelerated his speed as this was necessary in order for him to pass the horse, which he was aware was to his right, though he made no observation of her. He stated the reason he did not look at the horse was because he contemplated pulling his car into the northbound lane and therefore he was directing his total attention down the highway and to his left. There was no northbound traffic on the highway immediately prior to or at the time of the accident which required his intensive observation to the left and precluded him from observing the entire road ahead.
Defendant Thomas' complete failure to maintain a proper lookout is further established by his testimony that he never once observed the two Mays children riding their horses beside their father, nor Mrs. Mays traveling 50 feet to the rear with the flashing blinkers in operation upon the rear of her truck.
Ten to fifteen seconds elapsed from the time the horse left the paved roadway and the time she returned. The record does not establish the distance that Thomas was from the Mays procession at the time he made his first observation and slowed his car, but it does establish that he had rought his vehicle under control and slowed it so such an extent that it was necessary for him to accelerate the speed of the vehicle in order to engage in his contemplated passing maneuver.
Thomas, after having first seen the horse and realizing that she was acting up, which realization is established by virtue of the fact that he admitted making a statement to this effect to one of his passengers, was under a duty to "use ordinary care to prevent his vehicle from further frightening *284 the horse or colliding with him and to actually stop his vehicle rather than to risk the more probable danger of collision by proceeding." Plauche v. Consolidated Companies, supra.
If Thomas had seen what he should have seen, he would not have accelerated the speed of his automobile because of the existing condition and potential hazard that was in existence on the shoulder of the road in front of him. LSA-R.S. 32:64 provides:
No person shall drive a vehicle on the highway within this state at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the traffic on, and the surface and width of the highway, and the condition of the weather, and in no event at a speed in excess of the maximum speeds established by this Chapter or regulation of the department made pursuant thereto.
Thomas' failure to maintain a proper lookout and to operate his vehicle at the speed required by LSA-R.S. 32:64 under the circumstances existing at the time of the accident, constituted negligence that was a proximate cause of the accident.

CONTRIBUTORY NEGLIGENCE
Appellants contend that Eric Mays was guilty of negligence by riding his horse within 3 feet of the paved edge of the highway when there was ample room (38 feet) for him to have ridden the horse a further distance away from the heavily traveled portion of the roadway.
Eric Mays had owned and ridden horses for many years and was thoroughly familiar with their characteristics. The court in Plauche v. Consolidated, supra, made the following observation:
"Persons with knowledge of the characteristics and dispositions of horses and who have had experience in handling them, know that regardless of their gentleness they never become absolutely immune from fright."
While LSA-R.S. 32:22 gives unto the horserider the right to use the roadways of the state, he is also "subject to all of the duties applicable to the driver of a vehicle". We construe this to mean that he is required to maintain control of his horse and prevent the horse from suddenly entering into the highway in the direct path of a speeding automobile. While we do not hold that a horserider is required to travel on any particular portion of the roadway or shoulder, we do find that he is required to ride his horse on the road which he is using in a manner to minimize to the maximum extent possible under the existing conditions, the possibility that the horse would become frightened and cause him to lose control of the animal and violate the duties imposed upon him by LSA-R.S. 32:22. This requirement exists even though the horserider has a reasonable basis to believe his horse will not become excited and uncontrollable when placed in the immediate vicinity of noisy, fast-moving traffic.
Had Eric Mays ridden his horse a few feet further away from the paved edge of the highway on the more than adequate available area, she may not have been excited by the car pulling the boat and he could have retained control of her. We find Eric Mays was guilty of negligence in riding the horse within 3 feet of the edge of the pavement when he had an area available on which to ride that was 38 feet at its widest point from the edge of the paved portion of the highway.

LAST CLEAR CHANCE
Even though Mays was guilty of contributory negligence, plaintiffs are still entitled to recover from the negligent Thomas and his insurer if Thomas had the last clear chance to avoid the accident. In order for plaintiff Mays to invoke the doctrine of last clear chance, the evidence must show:
"(1) That the plaintiff was in a position of peril of which he was unaware, or from which he was unable to extricate himself; (2) that the defendant actually discovered, or should have discovered, the plaintiff's peril; and (3) that at the time defendant actually discovered, or should *285 have discovered, plaintiff's peril, defendant had a reasonable opportunity to avoid the accident." Ortego v. State Farm Mutual Automobile Ins. Co., 295 So.2d 593, p. 598 (La.App. 3d Cir. 1974).
Once Dusty became excited, fretful and uncontrollable and first entered upon the highway, Eric Mays was never thereafter capable of controlling his horse. He could not direct her movements or her path of travel, and for that reason, he was unable to prevent her from entering the highway directly in the path of the Thomas vehicle. Thomas actually observed the uncontrollable horse at about the time she became excited, and though he failed to observe her continuous out of control condition, there was no obstruction to his vision and he should have seen it. He is considered to have known what he could and should have seen. For this reason, he is considered to be aware of Eric Mays' continued peril while mounted upon an uncontrollable horse in the immediate proximity of a heavily traveled highway. At the time Thomas discovered Eric Mays' peril on the back of an acting up horse, he had brought his vehicle under control and he could have retained control of the vehicle by proceeding at a slow rate of speed, stopping if necessary, and avoided the accident. Under these circumstances, Thomas had the last clear chance to avoid the accident and plaintiffs are entitled to recover their damages even though Eric Mays was guilty of contributory negligence. See Handy v. LeJeune, 341 So.2d 1386 (La.App. 3d Cir. 1977).

STRICT LIABILITY OF ANIMAL OWNERS UNDER C.C. Art. 2321[5]
The appellants urge the application of the strict liability rule of Holland v. Buckley, 305 So.2d 113 (La.1974) to the circumstances of this case. We find the decision does not apply to this situation which is governed by a specific provision of the Highway Regulatory Act. LSA-R.S. 32:22. The Holland case dealt with circumstances where the plaintiff was injured by a dog belonging to another and therefore it is totally distinguishable from the claim asserted by Mr. and Mrs. Mays against the operator of an automobile and his insurer. The case is also distinguishable factually from the claims of the plaintiffs in reconvention because their damages were attributable at least partially to the fault of Thomas, a person other than the owner of the animal, and for this reason their claim would be excluded from the strict liability rule by the very rationale contained in the Holland v. Buckley decision.

DAMAGES
The only element of damages that appellant complains of is an award of $326.40 made for the wages which Mrs. Mays did not earn during the several weeks that she did not go to work because she cared for her injured husband. The plaintiff complains of this award on the following basis, "the record is completely barren of any medical evidence to show that Mr. Mays needed a full time nurse." The evidence establishes that Mr. Mays sustained, in addition to other injuries, an injury diagnosed as a contusion of the brain and he was in the hospital for approximately 11 days and in the bed at home for some two weeks after he was released from the hospital. Mrs. Mays worked at Western Electric and earned $4.20 per hour for a forty hour week. She did not return to work following the accident, but remained away from her work in order to care for her seriously injured husband. The loss of the wife's wages under these circumstances has been recognized as a recoverable element of damages. Berry v. Gulf Coast Construction Co., 229 So.2d 368 (La.App. 4th Cir. 1969).
We find that the trial judge did not abuse his much discretion provided for by Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976) in making the award on this element of damages.
*286 For reasons assigned, the judgment appealed from is AFFIRMED at appellant's cost.
NOTES
[*] Bolin, J., recused.
[1] R.S. 3:2803"No person owning livestock shall knowingly, willfully or negligently permit his livestock to go at large upon the following public highways of this state:"
[2] R.S. 3:2802"Livestock means any animal of the species of horses, mules, donkey, cattle, swine, sheep or goat."
[3] R.S. 3:2851"It shall not be lawful for horses, mules, donkeys, or asses to go on the paved, black-top and asphalt treated highways of the state system and the rights of way therefor." (emphasis supplied)
[4] The appellants contention that the case is factually totally different from the case here involved is correct. But, the trial court correctly applied the rules of law therein expressed to the facts of this case.
[5] C.C. Art. 2321"The owner of an animal is answerable for the damage [which] he has caused; * * *"