480 So.2d 860 (1985)
Perry Steven DOTSON, Individually and on Behalf of the Minors, Elizabeth Marie Dotson and Christine Lenee Dotson, Plaintiff-Appellant,
v.
Frank W. MATTHEWS, Individually and d/b/a M & M Cattle Company; M & M Cattle Company, Inc.; Royal Insurance Company; Donnie Richard Savell; and Charlene Rigdon, Defendants-Appellees.
No. 17359-CA.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1985.
Writ Denied January 31, 1986.
*862 Gordon, Bailey & Associates by Jack M. Bailey, Jr., Shreveport, for Perry Steven Dotson on behalf of minors.
Jack & Hudsmith by Wellborn Jack, Jr., Shreveport, for Perry Steven Dotson, individually.
Thibaut, Thibaut, Garrett & Bacot by John S. Thibaut, Jr. and Charest D. Thibaut, III, Baton Rouge, for Frank W. Matthews, individually, M & M Cattle Co. Inc. and Royal Ins. Co.
Before MARVIN, JASPER E. JONES, and FRED W. JONES, JJ.
MARVIN, Judge.
The husband and minor children of the victim, who, while a guest passenger in her husband's truck, was fatally injured in a collision with a horse, appeal a judgment, after jury verdict, rejecting their demands for damages against the owner of the horse. The horse "spooked" while being ridden near the paved roadway and bolted from a shallow ditch across the shoulder and onto the roadway into the path of the truck. The victim's husband who was driving the truck is found not negligent in any respect.
The critical issue is whether the assumed negligence of the horse rider, who we find was riding with the permission of the owner, absolves the owner of his legally presumed fault that arises from his ownership of the horse under CC Art. 2321. This issue is primarily legal. We find, as well, that the jury was clearly wrong in denying *863 plaintiffs recovery against the horse owner and we reverse and render judgment for plaintiffs. Holland v. Buckley, 305 So.2d 113 (La.1974); Rozell v. Louisiana Animal Breeders Co-Op, 434 So.2d 404 (La.1983); Richoux v. Hebert, 449 So.2d 491 (La. App.3d Cir.1983), writ denied.

FACTS
The accident occurred shortly after dark on Sunday, July 24, 1983, in a rural area on Hwy. 509 about 18 miles north of Mansfield. The highway is a two-lane blacktopped road running northerly and southerly. The pavement is approximately 22 feet wide. The paved portion of the highway is flanked on each side by a wide grassy shoulder and a shallow ditch or swale at and near the accident scene.
The horse, Duke, was being ridden by Charlene Rigdon in a northerly direction in the shallow ditch through grass and weeds several inches high. Ms. Rigdon was accompanied by her husband, by Donnie Savell, Duke's caretaker, and by two others who were on the Sunday afternoon trail ride and were returning to their starting point at the home of one of the riders.
Weather was not a factor. Visibility was afforded the riders by a full moon. Duke was walking ahead of the other horses through the grass when he was apparently "spooked" by what was described by the riders as a "rustle" or noise in the grass. Ms. Rigdon, a 28-year-old housewife, had been on trail rides before but had not ridden a horse in about seven years until this fatal day. Duke bolted and ran wildly from the ditch, across the shoulder, and onto the roadway as plaintiffs' truck approached, traveling southerly. Ms. Rigdon's efforts to bring Duke under control did not succeed. No other traffic was involved.
Plaintiff Perry Dotson, accompanied by his wife, drove his pick-up out of a curve and saw the danger posed by the horse. He slammed on his brakes and skidded about 65 feet before colliding with the horse and about 52 feet after. He testified that he was driving about 55 mph as he came out of the curve. The posted speed limit was 55 mph. Plaintiffs' expert generally opined to corroborate Perry Dotson's estimate. Defendants' expert estimated Dotson's speed to be about five miles faster than did plaintiffs' expert. The skid marks veered slightly but were essentially in Dotson's proper lane of travel.
The horse's head crashed through the windshield on the passenger side, crushing Mrs. Dotson. Ms. Rigdon was thrown off the horse. Fortunately, Mr. Dotson and Ms. Rigdon escaped permanent injury. The horse was also fatally injured in the collision. Mrs. Dotson was alive and was partially conscious when she was removed from the truck. Some efforts were made to resuscitate her at the DeSoto General Hospital when she arrived there by ambulance at 9:58 p.m. The doctor who examined her testified that her neck was obviously fractured and her spinal cord was obviously severed. An autopsy was not performed.

PROCEDURAL POSTURE
Plaintiffs sued the owner of the horse, Frank Matthews; his caretaker, Donnie Savell, who lived on the Matthews ranch; Matthews' corporation, M & M Cattle Co., Inc.; and his liability insurer, Royal Insurance Co., which had policy limits exceeding the amounts plaintiffs sued for. Also sued was Ms. Rigdon, Duke's rider, who was riding the horse with the express permission of Donnie Savell. The Matthews defendants alleged what they termed the "affirmative defense" of the third party fault of Donnie Savell, Ms. Rigdon, and Perry Dotson. Dotson's collision insurer, who paid him for his totally damaged truck, intervened for the amount it had paid Dotson but did not appeal the judgment that rejected its demands.
Plaintiffs' attorneys did not seriously oppose motions for directed verdicts dismissing defendants Ms. Rigdon and Donnie Savell, *864 [1] and the case went to the jury solely on the issues joined between plaintiffs and Matthews including, however, Matthews' defense of third party fault. The jury returned a general verdict in favor of Matthews, finding no liability. The Matthews defendants objected in the trial court to the dismissal of Savell and Ms. Rigdon, reserving their rights to assert, as a defense, the third party fault of either or both Savell and Ms. Rigdon as a defense to liability, but did not appeal or answer the appeal on any issue.
The trial court directed counsel that the jury could not be informed of the directed verdicts dismissing Savell and Ms. Rigdon from the action and instructed the jury, among other things, that
One of the defenses which the law permits the owner of a domesticated animal to raise is that some third person, for whose conduct the owner of the animal is not responsible, was at fault and thereby helped cause the plaintiff's injury. If you conclude that a third person did act in such a way and fail to take those reasonable precautions for plaintiff's safety that we would expect a reasonable prudent person to take under these circumstances, and that plaintiff's injury resulted from that conduct, then you must return a verdict for the defendant....
The following specific statutes are applicable to this case: Section 22, Title 32 of our statutes: Every person riding an animal or driving an animal drawn vehicle upon a roadway shall be granted all the rights and be subject to all of the duties applicable to the driver of a vehicle by this chapter, except those provisions which by their very nature can have no application. (Our emphasis.)

ASSIGNMENTS OF ERROR
On appeal, plaintiffs complain that the quoted instructions, and others, were legally erroneous and should not have been given and that plaintiffs should have been allowed to argue to the jury about the effect of the trial court's directed verdicts dismissing Savell and Ms. Rigdon from the action. Plaintiffs' other assignments relate to the trial court's rulings on the admissibility of evidence.[2]

LA.CC ART. 2321 AND THE CASE LAW
In Holland v. Buckley, supra, Buckley's large german shepherd attacked Holland's toy poodle while Holland was walking his dog on the sidewalk across the street from Buckley's residence. When Holland attempted to "ward off" the larger dog it turned on him and bit him. Holland was *865 obviously attempting to bring under control the then uncontrollable shepherd. The noxal surrender portion of Art. 2321 was said to have been conceded by the parties as inapplicable. p. 115. That portion of Art. 2321 is not argued here.
The court's summary in Holland sets forth the "correct interpretation" of Art. 2321. The owner of a domesticated animal is presumed to be at fault for the harm done by that animal. This presumed fault is not absolute liability, but is in the nature of strict liability from which the owner may exculpate himself by showing that the harm resulted from some independent cause in fact not imputable to the owner, such as by the fault of the victim, by the fault of a third person for whom he is not responsible, or by a fortuitous event. p. 119. Two justices strongly dissented.
The animal owner's liability arises solely from ownership and, where permissive custody is granted to another, is nondelegable. By entrusting his animal to another custodian, the owner does not escape responsibility because that custodian is a third person for whom the owner is answerable. Rozell v. Louisiana Animal Breeders Co-Op, supra, at pp. 407-408.
We should not and do not speculate on what the jury might have found, but review the facts most favorably to support the verdict. If the jury determined, however, that Ms. Rigdon was legally a stranger to the owner and his caretaker, Savell, and was therefore a third person for whose fault the owner was not answerable or responsible, that finding would be clearly wrong.
Matthews entrusted his horse to his caretaker and the caretaker permitted, even suggested, that Ms. Rigdon ride the horse because Duke was more gentle than the other horses on the ride. The record supports no conclusion other than that Ms. Rigdon, under the circumstances of this record, is not the stranger-third person whose independent fault might exculpate the owner under Holland, but is the permissive custodian-third person for whom the owner is answerable under Rozell. See Olsen, cited and discussed infra.
The owner of the bull in Rozell did not give permission to each successive permittee, employees of the original permittee, who handled the bull. The injured employee, Rozell, violated an express rule of his employer by attempting to handle the bull by himself. The owner of the bull was nevertheless held responsible for the injury caused that employee by the bull.
Duke was a "pleasure" horse that Matthews sometimes went weeks without seeing. While Savell did not obtain Matthews' express permission to allow Ms. Rigdon to pleasure-ride Duke, Matthews did not prohibit Savell, during his years of employment, to ride and to exercise daily control over the horse. Savell's permission to Ms. Rigdon was express. Savell's authority is implied from the relationship between him and Matthews, who had employed him as his resident caretaker for two years.
If the jury found that Ms. Rigdon was negligent in failing to control an assumed "controllable" horse and that this negligence caused, whether wholly or partially, the harm, such a finding would not excuse or avail the owner, except perhaps in gaining contribution from Ms. Rigdon, an issue which was not before the jury and which is not before us. Ms. Rigdon, as we have said, is not the stranger-third person whose fault will exculpate the owner under Holland, but a permissive user or custodian under Rozell for whom the owner, simply as a matter of policy is "answerable."

OPEN RANGE LAWS

HIGHWAY REGULATORY ACT
The Open Range Laws (LRS 3:2801 et seq.) are not applicable to mounted horses, but only to horses running at large. Mays v. American Indem. Co., 365 So.2d 279 (La.App. 2d Cir.1978), writ denied. There we considered the respective duty of a horse rider, intentionally on or near the roadway, and the driver of an automobile. The plaintiff was the horse owner-rider who was suing the car driver.
*866 Every person riding an animal upon a roadway is subject to the duties applicable to a driver of a vehicle upon the roadway, except those which by their very nature can have no application. LRS 32:22. Ms. Rigdon did not "ride" Duke on or near the paved roadway but was riding him off the shoulder in the shallow ditch when Duke spooked and went out of control.
The Highway Regulatory Act has been held not to apply to a horse being ridden in the ditch adjoining a paved roadway because of the definitions of LRS 32:1(17) and (44). Broussard v. Annaloro, 268 So.2d 293 (La.App. 3d Cir.1972).
Even where applicable, the Highway Regulatory Act should not preclude application of CC Art. 2321 under appropriate circumstances. Mays was decided when contributory negligence was applicable and on reasonable-man negligence principles. The driver saw the horse in Mays "acting up" on and near the paved portion of the roadway in ample time to have avoided the accident. The "fault" of the owner of the Mays horse, whether actual or presumed, was not recognized to bar the owner's recovery from the car driver. Mays should not be extended beyond its facts so as to relieve Matthews of his presumed fault under the circumstances here presented.

THE JURY INSTRUCTIONS AND THIRD PARTY FAULT
Plaintiffs primarily complain that the instruction on third party fault, taken from pattern instructions prepared by H. Alston Johnson (Louisiana Jury Instructions, Paul M. Hebert Law Center Publications Institute, 1980, pp. 240-243.) are contrary to the sole fault requirement of Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1978). Olsen involved the applicability of CC Art. 2322 to injury and deaths caused by the explosion of an electric hot water tank contained in a housing structure that was moved from time to time and placed atop offshore drilling platforms. Nonetheless, Olsen referred to the trilogy of the strict liability articles in this language:
The fault of a "third person" which exonerates a person from his own obligation importing strict liability as imposed by Articles 2317, 2321, and 2322 is that which is the sole cause of the damage, of the nature of an irresistible and unforeseeable occurrence  i.e., where the damage resulting has no causal relationship whatsoever to the fault of the owner in failing to keep his building in repair, and where the "third person" is a stranger rather than a person acting with the consent of the owner in the performance of the owner's nondelegable duty to keep his building in repair. Our emphasis.
When we read the entirety of Part II of the Olsen opinion (defenses raised to liability under article 2322 ...), the term sole cause in Olsen, we gain our understanding that the liability of the owner of an animal is non-delegable in some circumstances. Olsen attempts to explain sole cause in two pages with two footnotes, which will not be reproduced here, by saying that this "sole cause" is "of the nature of ... an unforeseeable occurrence ... where the damage resulting has no causal relationship whatsoever to the fault of the owner ... and where the `third person' is a stranger rather than a person acting with the consent of the owner in the performance of the owner's non-delegable [liability for his failure] to keep his building in repair [citation omitted]." Our emphasis. The court then said:
In view of [the above] conclusion, we find no merit to the defendant's argument that the building owner might somehow be exculpated from his liability under Article 2322 to keep the building in safe repair, because the damages could be said to result (also) from the negligence of an independent contractor in performing work on a part of the premises within its control. Bracketed material supplied. Parenthetical material is the Supreme Court's. ibid., at 1294.
We view Olsen's explanation of sole cause to be akin to the phrase that the same author uses in Holland to explain *867 what things will exculpate the owner of an animal that causes harm to another, that is, from "some independent cause not imputable to the [owner]." 305 So.2d at p. 119. Our understanding is that the word imputable in Holland and the word answerable in Rozell are not used in their technical legal sense, but are used to illustrate that the third party fault must be independent of and must have no causal relationship whatsoever to the owner.
It is clear that the sole cause in Olsen must derive from a third personstranger to the building owner rather than from a third person-independent contractor of the owner. It is also clear that the independent cause in Holland-Rozell must derive from a third person-stranger to the animal owner rather than from a third person-permissive custodian or user of the animal.
The pattern jury instruction of which these plaintiffs complain, when considered in the abstract, may be correct that the fault of a third person-stranger to the animal owner that "helped cause" the injury, may be weighed against and may overcome, in proper circumstances, the presumed fault of the owner, but that instruction requires much clarification even in proper circumstances.
In conclusion on this issue, we need not disapprove of that instruction generally or under the particular circumstances of this case, having found that Ms. Rigdon is not the third party-stranger of Holland-Olsen-Rozell. We shall not attempt to suggest in the abstract the detailed jury instructions that might be required when the third party is the true stranger to the animal owner and shall leave that to the scholars who prepare such jury instructions for the trial courts. Recent decisions of our highest court have indicated that the various forms of fault (2315-2322) may be compared. See Bell v. Jet Wheel Blast, Div. of Ervin Ind., 462 So.2d 166 (La.1985). We need not decide in this case, however, that the fault of a third person-true stranger to the animal owner must be found to be the sole fault of the harm to absolve the animal owner from his presumed fault. The manner in which this case is postured presents no issues of comparative negligence or of contributionapportionment. The other jury instructions complained of were not legally in error in the context in which they were given, when the instructions as a whole are considered.
We find no error in the trial court's rulings on the admissibility of evidence and shall render judgments for plaintiffs.

QUANTUM
Mr. Dotson saw a doctor at the emergency room in the Mansfield hospital the day following the accident complaining of lower back pain. The doctor who saw him found some muscle spasm, diagnosed his injury as a tender lower back, and prescribed a muscle relaxant, pain medication, and warm baths. It was not shown how long Mr. Dotson's pain persisted. His medical expenses totaled $94. The record does not show that he was further treated. We consider that $500 would justly compensate Mr. Dotson for his personal injury. Compare Bitoun v. Landry, 302 So.2d 278 (La.1974).
In addition to his medical expense, Mr. Dotson should recover for the treatment to his wife and for the expenses connected with her interment. Specials are:

Ambulance $ 36.25
Hospital services 526.25
Funeral and interment 2,583.85
Mr. Dotson's hospital expense 94.00
 _________
TOTAL $3,240.35

We shall award Mr. Dotson that amount as special damages.
Perry and Marshelle Dotson had been married about five years and three months at the time of her death. They had two daughters, Elizabeth Marie, age 4, and Christine Lenee, age 3. Defendants do not dispute that Mrs. Dotson was a loving wife and mother. The family was close in every sense of the word, according to the record.
Mrs. Dotson had worked to help support the family, initially at the DeSoto General Hospital and later for two different doctors. She was 23 years old and was implementing *868 plans to enroll in college to pursue a degree and become a registered nurse. At the time of her death she was earning about $4.50-$5.00 per hour performing part-time nursing services for Dr. Evans of Mansfield. Mrs. Dotson's mother cared for her children while Mrs. Dotson worked.
Plaintiff's economic expert testified that the widower and children "lost" almost $240,000 in household services and approximately $837,000 in wages because of Mrs. Dotson's death, after appropriate discounting factors.
Several witnesses who were at the scene before the ambulance arrived testified that Mrs. Dotson appeared to be in severe pain and was trying to speak for about 10 or 15 minutes. Under these circumstances, an award should be made to compensate for her conscious suffering. Considering her degree of consciousness, we deem that a just award in this respect would be $15,000, to be divided equally among her three survivors. CC Art. 2315. See Harrell v. Empire Fire and Marine Ins. Co., 449 So.2d 1177 (La.App. 2d Cir. 1984). Compare the award in Price v. Louisiana Farm Bureau Mut. Ins. Co., 457 So.2d 722 (La.App. 2d Cir.1984), writ denied.
Mrs. Dotson's future earning capacity should be further discounted, however, in order to arrive at a just award. Plaintiff's economic expert used a working expectancy of 37.14 years. Defendants showed that a 23-year-old woman had a working expectancy of about 25 years. Defendants also argue that the academic attrition rate at the nursing school Mrs. Dotson was seeking to enter was about 50 percent and that plaintiff's expert over-estimated the potential earnings of a registered nurse. Net earnings are also subject to a consumption reduction of no less than 25 percent. See Fisher v. Walters, 428 So.2d 431 (La.1983); Harrell, supra. Compare Bialy v. State, etc., 414 So.2d 1273 (La.App. 3d Cir.1982), writ denied.
When we consider the record as a whole, we deem that these awards will achieve substantial justice:

Perry Dotson
Specials $ 3,240.35
General damage 150,000.00
Economic damage 80,000.00
Mrs. Dotson's pre-death
damages (1/3) 5,000.00
 ___________
 $238,240.35
First child) (Elizabeth Marie)
General damages $100,000.00
Economic damage 50,000.00
Mrs. Dotson's pre-death
damages (1/3) 5,000.00
 ___________
 $155,000.00
Second child (Christine Lenee)
General damage $100,000.00
Economic damage 55,000.00
Mrs. Dotson's pre-death
damages (1/3) 5,000.00
 ___________
 $160,000.00

DECREE
Accordingly the judgment is reversed and judgment is hereby rendered against defendants Frank Matthews and Royal Insurance Company, in solido, in favor of
(A) Perry Dotson for $238,240.35
(B) Elizabeth Marie Dotson for $155,000.00
(C) Christine Lenee Dotson for $160,000.00
with interest from judicial demand and for all costs, including the costs of expert witnesses as the same may be agreed to or fixed by the trial court in a further proceeding.
REVERSED AND RENDERED.
NOTES
[1] Plaintiffs' tactics were apparently aimed at precluding the defense of third party fault. Plaintiffs presented no evidence or opposition to the directed verdict in favor of Mr. Savell and Ms. Rigdon and argued in support of the motion.
[2] Other issues raised by plaintiffs on appeal have no merit.

A. Whether the trial court erred by allowing defendants to twice file supplemental and amending answers containing additional affirmative defenses.
The first supplemental and amending answer was filed with leave of court pursuant to CCP Art. 1151 and no objection was made to the filing. The second supplemental and amending answer was filed after evidence had already been heard by the jury and the amendment was proper to conform to the evidence. CCP Art. 1154.
(B) Whether the trial court erred by allowing the introduction of evidence and jury charges concerning medical malpractice by ambulance personnel at the accident.
Any error here is harmless since the trial judge properly instructed the jury that this is not a defense to liability. Weber v. Charity Hosp. of Louisiana, 475 So.2d 1047 (La.1985).
(C) Whether the trial court erred by not allowing plaintiff to introduce the insurance policy issued to defendant.
The jury was informed that coverage was in excess of the amount prayed for.
(D) Whether the trial court erred by not allowing the introduction of a photograph of Mrs. Dotson's body in the casket at her funeral (to prove the finality of death, according to plaintiffs' counsel).
Numerous witnesses, lay and expert, and a death certificate established the death of Mrs. Dotson. The photograph was not the best evidence of death and the trial court correctly ruled to deny its admissibility.