KLIEBERT, Judge.
On February 13, 1976, Wilda Provost (hereafter Provost), as operator, with her three minor children, Sonia, Christy and Clara, as passengers, all plaintiffs-appellees, was operating an automobile north (towards front Vacherie) on Louisiana Highway 20, a two-lane highway. Following the Provost vehicle was a tractor-trailer driven by Charles Bovie (hereafter Bovie), and owned by A. E. Gravois & Sons, Inc., defendants-appellants. As Mrs. Provost approached her destination, she attempted to turn left into a driveway or roadway. At the same time, Bovie was operating the tractor-trailer in the extreme left or passing lane. The right-front fender of the truck struck the left side of the turning Provost vehicle.
Suit was filed by Wilda Provost and Car-ley Provost, her husband, individually and on behalf of the minor children, Sonia, Christy and Clara. Named defendants were Bovie, A. E. Gravois & Sons, Inc. (hereafter Gravois) and their insurer, Southwestern Insurance Company (hereafter Southwestern). They in turn filed a third party demand against Wilda and Car-ley Provost.
The jury found mutual fault on the part of Provost and Bovie and awarded damages of $10,000.00 for each of the children, Sonia, Christy and Clara. Cast in judgment for total damages of $30,000.00 were the defendants-appellants, Bovie, Gravois and Southwestern. There was also judgment under the third party demand in favor of these defendants and against Wilda and *1289 Carley Provost for one-half of the total award.
On appeal, defendants-appellants urge two specifications of error: (1) the evidence adduced at trial does not support the finding of negligence on defendants’ part and (2) the evidence does not support the damage award.
First, we will consider the negligence issue. Mrs. Provost’s version of the accident is as follows: The truck being operated by Bovie had been traveling behind her for several miles at a distance of four to five car lengths. She put her left-turn signal on approximately one hundred yards prior to reaching the driveway and came to a complete stop at the driveway while she allowed oncoming traffic to pass. After the oncoming vehicle passed, she checked the rear through her mirror, put her left hand out the window, then turned her head to see if the path was clear. As she was executing her turn, her vehicle was struck by Mr. Bovie’s truck. She denied hearing any horns or seeing the truck’s blinkers as it changed lanes to pass. She also stated that Mr. Bovie made the statement to her that he was sorry he couldn’t stop before hitting her.
The operator of the truck, Bovie, testified he had been following Mrs. Provost for approximately a mile and a half at a speed of 30-35 miles per hour. He had been wanting to pass her, but couldn’t because of oncoming traffic. As soon as the traffic was clear, he picked up speed, put on his left blinker, blew his horn, and proceeded to pass. When the front of his truck was about even with plaintiff’s left front door, Mrs. Provost turned left in front of him. He denied seeing Mrs. Provost come to a complete stop or seeing any brake lights, signal lights, or left-turn signal by Mrs. Provost. He further denied telling Mrs. Provost that he was sorry he was unable to stop before hitting her.
Olivia Scioneaux was the owner of the house adjacent to the roadway or driveway which was Mrs. Provost’s destination. While she did not see the collision, Mrs. Scioneaux stated she saw, through her window, Mrs. Provost come to a complete stop prior to attempting to turn. Additionally, she testified that she heard no horns prior to hearing the sound of the collision.
Apparently believing only part of Mrs. Provost’s testimony and only part of Mr. Bovie’s testimony, the jury found both parties were at fault in the accident.
Mrs. Provost’s credibility may have been considered impaired somewhat by her giving different accounts of the day’s events and her route during her deposition from that testified to at the trial. In addition, Dr. Olin Dart, an accident reconstruction expert, testified that under the facts as asserted by Mrs. Provost, the truck would either have had to stop or hit her from the rear rather than in the side as shown by the physical facts.
However, Mr. Bovie’s credibility may also have been impaired by his testifying that Mrs. Provost turned just as he was even with her left door, which is a physical impossibility given the 63 feet long skid-marks which were made by his truck prior to the point of impact and given the fact that the resting place of the vehicles was at the driveway’s entrance. In addition, Bovie stated in a deposition that he blew his horn twice before passing, but on trial, he stated that he blew the horn only once. Furthermore, Bovie admitted that he had seen the Provost vehicle slowing down, but maintained he did not see any brake lights or blinkers.
The Supreme Court has restricted the intermediate appellate court’s ability to change a trial court’s finding of fact only to instances where the trial court’s finding of fact was “clearly wrong.” Canter v. Koehring Company, 283 So.2d 716 (La.1973), and Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). Based upon the record before us, we believe there was evidence before the trier of the fact (the jury) which upon its reasonable evaluation of credibility, furnished a reasonable factual basis for the jury’s finding of mutual fault; hence, under the Supreme Court mandate, we cannot change the jury’s findings of fact.
*1290 Next, we consider the issue of quantum. Each minor child was awarded damages of $10,000.00. As is true for the appellate review of facts, there are restrictions imposed on the intermediate appellate court by the Supreme Court in the methodology to be followed in changing a damage award.
Article 1934(3) of the Civil Code[1] provides in pertinent part as follows:
“In the assessment of damages under this rule, as well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury, while in other cases, they have none, but are bound to give such damages under the above rules as will fully indemnify the creditor, whenever the contract has been broken by the fault, negligence, fraud or bad faith of the debtor.”
As the Supreme Court deemed it necessary to effect a change in the philosophy for the review of damages awarded by the lower courts or juries, judges paraphrased this legislative language into jurisprudential guidelines for appellate review of damages. More specifically, Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), restated the principles first enunciated in Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971) as follows:
“(1) To modify the amount of an award for general damages, an appellate court must find that the trial judge or jury has abused the ‘much discretion’ accorded by the codal provision. (2) The awards in other cases serve only as an aid in determining whether there has been an abuse of discretion and rivet no steel frame of uniformity.”
and in the same case thereafter made the following observation:
“Recitation of the principles governing the legal issue presents no problem for appellate courts. It is the application of those principles to particular cases which has proved difficult on occasion. Two questions are especially troublesome. What, in a given case, constitutes an acceptable quantum judgment in the sense of its being neither excessive nor inadequate within the frame-work of the legally directed ‘much discretion’ accorded judge or jury? When do awards in other possibly similar, reported cases properly aid (or erroneously mislead) an appellate court in determining whether there has been an abuse of discretion by a given judge or jury?”
Thereafter, for further elaboration and guidance in the methodology for appellate review, the Supreme Court in Reck v. Stevens, 373 So.2d 498 (La.1979) quoted the following from the Coco decision, supra:
“We do re-emphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence.”
To further illustrate its philosophy for review of quantum, the Supreme Court in Coco, supra, p. 334, quoted from some of its previous decisions as follows:
“... The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court. Bitoun v. Landry, supra at 279 [302 So.2d 278, La.1974].”
*1291 And also in Reck v. Stevens, supra p. 501, the Supreme Court quoted from its prior decisions as follows:
“Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s ‘much discretion,’ La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited function — if indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) ‘similar’ injuries, see Coco at 341 So.2d 334.
However, absent an initial determination that the trial court’s very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier’s award. Wilson v. Magee, 367 So.2d 314 (La.1979).”
As we understand these rulings, they may be crystallized into one principle enunciated in Coco, supra, at page 335, to-wit:
“Nonetheless, the ultimate determination by an appellate court as to whether a given judge or jury abused their ‘much discretion’ as a matter of law is a judgment call ....” (Emphasis Supplied)
In making the “judgment call,” however, the reviewing intermediate appellate courts may not substitute its judgment for that of the trier of the case, rather, it is relegated to the position of determining whether the trier of the case has abused its “great discretion” as the judges having the last say in the matter may in their judgment believe that discretion to be. With these principles in mind, we proceeded to review the record here.
There is a paucity of evidence to support the damage awards to Sonia, Christy and Clara Provost. No expert medical testimony to substantiate physical injuries to any of the children was submitted. Mr. Bovie removed the children from the Provost automobile and testified that none of them was bleeding. Mrs. Provost stated that Christy had a scratch over an eye and the other two children “were bruised pretty bad,” with Sonia having bruises on her legs and an arm. Furthermore, the two children in the rear seat (Sonia and Clara) were thrown into the front seat. It is unclear as to whether the children were taken to the hospital, with Mrs. Provost stating that they were, but with Mrs. Scioneaux and Mr. A. E. Gravois stating that they were not. Mrs. Provost testified to Sonia’s having had nightmares nightly since the accident (a period of four years) and she did not have them prior to the accident. Based on this evidence, the jury awarded $10,000.00 to each child.
Were we the initial maker of the “judgment call” or the final authority on the “judgment call,” we could and would render an opinion stating that all of the awards are excessive. As an intermediate appellate court, however, we are neither and must instead determine first, whether the trier of the case “abused its much discretion,” and second, “articulate the basis used in fixing a different award, as in the judgment of the superior court is proper.”
Notwithstanding the paucity of the evidence here, we cannot conclude that the jury abused its “much discretion” in finding that all three of the children were *1292 in fact injured in the accident. In our judgment, however, the jury did abuse its “much discretion” in awarding $10,000.00 for the injuries sustained by Clara Provost and those sustained by Christy Provost, but did not abuse their “much discretion” in awarding $10,000.00 to Sonia for over 1000 nights of nightmares. Thus, we cannot disturb the award of $10,000.00 to Sonia Provost, but must articulate the basis for a different award to Christy and Clara.
Although believing $300.00 to be the right award for soft tissue injuries, this court reluctantly affirmed $2,000.00 for each of five persons in a minor accident because of constraints imposed by the Supreme Court on review of quantum, Sanders v. Hall, 345 So.2d 590 (4th Cir. 1977). The Supreme Court granted writs at 347 So.2d 248 with an order remanding “for consideration in the light of Art. 5, Section 10(B), Louisiana Constitution and Article 1934(3) of the Louisiana Civil Code.” On the remand at 350 So.2d 262, this Court reduced the district court award to $300.00 for each plaintiff. From that, we must accept as a matter of Louisiana Law that $2,000.00 is too high for simple soft tissue injuries. Then, from this court’s reduction to $300.00 each on remand, we must conclude that $300.00 is the highest possible award for such soft tissue injuries and a fortiori for mere bruises as here testified to. Accordingly, we conclude that the figure which in the judgment of the Supreme Court to be right for the injuries sustained by Christy and Clara Provost is $300.00 each.
Accordingly, the judgment is amended to read as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the defendants pay unto Carley Provost in his capacity as Administrator of the estate of his minor children, Sonia Provost, Christy Provost and Clara Provost, the following: To Carley Provost as Administrator of the Estate of Sonia Provost the sum of $10,000.00; to Carley Provost as Administrator of the Estate of Christy Provost the sum of $300.00; and to Carley Provost as Administrator of the estate of Clara Provost the sum of $300.00; all sums with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the defendants, A. E. Gravois & Sons, Inc., Charles Bovie and Southwestern Insurance Company, and against the plaintiffs, Wilda Provost and Carley Provost for one-half of the amounts awarded hereinabove.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the costs of court be paid by defendants, A. E. Gravois & Sons, Inc., Charles Bovie and Southwestern Insurance Company.
All costs of this appeal to be paid by appellants.

AMENDED AND AFFIRMED.

. This particular article is found in Title IV of Book III which is entitled “Of Conventional Obligations” with the particular article being entitled “Measure of damages for breach of contract.”