413 So.2d 649 (1982)
Doris J. RYLE, Individually For the Use and Benefit of the Minor, Raymond DiJon Ryle
v.
C. R. POTTER, et al.
No. 14708.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
*650 Howard M. Nugent, Jr., Alexandria, for plaintiffs-appellees Doris J. Ryle, Ind., etc.
A. Clay Pierce, Jr., Baton Rouge, for defendants-appellants C. R. Potter, Mary G. Potter and Independent Fire Ins. Co.
Before COVINGTON, COLE and WATKINS, JJ.
WATKINS, Judge.
This is an action for personal injuries sustained by a 10 year old boy, Raymond DiJon Ryle, brought by the boy's mother, Doris J. Ryle, in her individual capacity and as the boy's natural tutrix, against C. R. Potter and Mary G. Potter, parents of Billy Potter, also a 10 year old boy who was residing in his parents' home, who shot DiJon (as he was called) Ryle, with a Benjamin pump air rifle. The trial court rendered judgment for plaintiffs in the sum of $8,077.16 special damages and $20,000.00 damages for pain and suffering. Defendants appealed and plaintiff answered the appeal, seeking an increase in general damages to $50,000.00. We affirm.
On the evening of February 15, 1979, DiJon Ryle went over to Billy Potter's parents' home, whether upon invitation or not is unclear, and the two started shooting at a target in the Potter's back yard with the air rifle. One would fire the air rifle while the other stood behind him. Finally, to vary the game, DiJon went over to a tree which stood between the target and the place from which the boys were firing and stood behind the tree. The tree lay to the left of the direct line of fire. After Billy shot at the target once, DiJon stuck his head from behind the tree and Billy aimed the air rifle at him. DiJon told him not to do that. After Billy then fired the rifle at the target, DiJon again stuck his head out from behind the tree. Billy again pointed the air rifle at him. DiJon did not draw back, as he thought Billy was just trying to scare him. Billy fired the gun, he testified, thinking he would strike the tree. The B-B shot from the air rifle struck Billy a short distance behind his right eye, penetrated the skull, and became lodged in the right hemisphere of the brain.
Billy was taken to Our Lady of the Lake Hospital and then to Baton Rouge General Hospital. Dr. Anthony S. Ioppolo performed a craniotomy upon DiJon, which entailed cutting through the scalp, removing a portion of the skull about two inches in diameter, probing into the brain tissue which necessitated removal of some brain tissue, removing the B-B, replacing the portion of the skull with the bone structure, and closing the scalp with staples. The operation was a very serious operation. DiJon recuperated normally physically, but suffered an anxiety reaction for which he was treated by a psychiatrist, Dr. Charles F. H. Colby, on two occasions. His school work has never measured up to the level he had attained before, when he was an A, B and C student. After the craniotomy, he seemed to lose interest in his work, although he did play tackle football the next Fall.
*651 The parents of a child who resides at home are liable for the torts committed by the child. LSA-C.C. arts. 237, 2318. A child may be of such tender age that he does not fully appreciate the dangerous consequences of his act. Turner v. Bucher, 308 So.2d 270 (La.1975). Here, it is doubtful that Billy was fully aware of the dangerous consequences of firing the shot that struck DiJon. Billy was 10 years old at the time and testified he intended to hit the tree. An adult would have been aware of the danger in hitting DiJon. Apparently, Billy was not. However, strict liability is imposed on a parent if the act of the child would be delictual except for the inability of the child to discern the consequences of his act. Turner, supra. Here, an adult would discern the consequences of firing an air rifle under the circumstances presented in this case. An adult who had fired the air rifle under similar circumstances would be guilty of gross negligence, at the very least, which gross negligence would give rise to delictual responsibility. Thus, strict liability would be imposed upon Billy's parents.
The only defenses against the strict liability imposed by Turner are a showing of fault by the victim, fault of a third person, or a fortuitous event. Wilkinson v. Hartford Accident and Indemnity Company, 411 So.2d 22 (La.1982), states that while a child of 12 can be guilty of contributory negligence, such a child's actions must be judged by his maturity and capacity to evaluate circumstances in each particular case, and he must exercise only the care expected of his age, intelligence, and experience. Thus, as we further gather from Plauche v. Consolidated Companies, 235 La. 692, 105 So.2d 269 (La.1958), and from Outlaw v. Bituminous Insurance Company, 357 So.2d 1350 (La.App. 4th Cir. 1978), writ denied 359 So.2d 1293 (La.1978), although a 9 or 12 year old may be guilty of contributory negligence, he is not to be held to adult standards of comprehension of danger and duty of self-care. In the present case, an adult would have perceived the danger of standing behind the tree with an air rifle pointed at oneself, and taken preventive action, such as drawing back behind the tree (which was sufficiently large to protect DiJon completely). DiJon did not draw back, obviously thinking Billy was just playing a game. Given a child's standard of conduct and comprehension of danger, DiJon did not act unreasonably in not taking preventive action. We do not find that DiJon was at fault so as to preclude a finding of strict liability on the part of Billy's parents. As we noted in Sullivan v. Gulf States Utilities Company, 382 So.2d 184 (La.App. 1st Cir. 1980), the relationship of victim fault (precluding strict liability) and contributory negligence (precluding liability for negligence) has not been fully worked out by this state's jurisprudence. Suffice it to say that in the present case we find DiJon to have been free from victim fault because of his tender years. There, thus, is no barrier to strict liability. We, therefore, affirm the action of the trial court in finding the Potters liable.
The portion of the brain that was struck does not affect cognitive ability, although it does affect one's personality. When DiJon returned to school after the operation, he was worried about being "retarded" and seemed to have lost interest in his school work. Some of the testimony of Dr. Colby, the psychiatrist who examined and treated DiJon on two appointments, seems to indicate some measure of retardation, although whether or not that condition was attributable to his having been shot is unclear. Also, DiJon suffered a partial hearing loss, which the testimony as a whole suggests may have resulted from the accident. Furthermore, DiJon testified at the trial, and his testimony is vague and rather unresponsive to the questions asked. All of this leads us to suspect that it is possible that DiJon may have sustained permanent brain injury to some extent. However, there is certainly no clear and unequivocal testimony that would establish permanent brain injury. We cannot, therefore, say that the trial court abused its much discretion in awarding the sum of $20,000 as general damages, although the sum appears somewhat smaller than the degree of injury would require. See LSA-C.C. *652 art. 1934. In any event, we cannot substitute our judgment for that of the trial court absent a clear abuse of discretion, which we do not find in the present case. Provost v. A. E. Gravois and Sons, Inc., 398 So.2d 1287 (La.App. 4th Cir. 1981).
Accordingly, we affirm the judgment of the trial court at appellants' cost.
AFFIRMED.